## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-4241

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KATRELL B. MORRIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois, Springfield Division.
No. 01 CR 30064—**Jeanne E. Scott,** *Judge.*

ARGUED APRIL 5, 2002—DECIDED JUNE 17, 2002

Before FLAUM, *Chief Judge*, POSNER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Katrell Morris pled guilty to possession of a firearm by a felon and was sentenced to 180 months imprisonment, 5 years of supervised release, and a $100 special assessment. He appeals his sentence on a number of grounds, but the dispositive one is his challenge to the court's application of the armed career criminal enhancement. Morris acknowledges that if the armed career criminal enhancement is upheld, then his other challenges to the sentence are meaningless because the sentence would be valid.

Morris' sentence was enhanced under the Armed Career Criminal Act (ACCA), which provides in relevant part

(e)(1) In the case of a person who violates section 922(g) of this title *and has three previous convictions* by any court referred to in section 922(g)(1) of this title *for a violent felony or a serious drug offense, or both, committed on occasions different from one another*, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years . . . .

[emphasis added] 18 U.S.C. § 924(e)(1). The convictions which formed the basis for that enhancement were a juvenile adjudication for attempted robbery, which Morris does not challenge, and two convictions for aggravated discharge of a firearm. The aggravated discharge convictions stemmed from actions taken on a single night, and resulted in concurrent eight year sentences. Morris argues that the enhancement is not proper because the aggravated discharge convictions were not committed on occasions different from one another and thus he lacks the three convictions necessary for application of the armed career criminal enhancement. He further contends that the enhancement of his sentence violated his constitutional rights as set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because a jury was never presented with the issue of whether the convictions were committed on occasions different from one another.

We first consider the *Apprendi* issue. Morris argues that under *Apprendi*, the determination of whether his prior convictions were "committed on occasions different from one another" should have been presented to the grand jury, tried before the jury, and found beyond a reasonable doubt before he was sentenced under § 924(e)(1). We rejected this argument in *United States v. Skidmore*, 254 F.3d 635 (7th Cir. 2001), and that remains the law of this circuit. *Skidmore* relied on *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), in which the Supreme Court held that recidivism used to enhance a defendant's maximum penalty is not an element of a crime that must be charged in the

indictment and determined beyond a reasonable doubt, but is instead a traditional sentencing factor decided by the judge. *Skidmore*, 254 F.3d at 642; *Almendarez-Torres*, 523 U.S. at 239, 243-44. *Almendarez-Torres* noted that recidivism has long been considered a distinct issue because it "'does not relate to the commission of the offense, but goes to the punishment only.'" 523 U.S. at 244, *quoting Graham v. West Virginia*, 224 U.S. 616, 629 (1912). Although the *Apprendi* Court suggested that *Almendarez-Torres* might not survive the logic of *Apprendi*, the Court did not overrule *Almendarez-Torres*, and in fact explicitly carved out an exception for recidivism in its holding. *Apprendi*, 530 U.S. at 489-90. Unless and until the Court chooses to overrule *Almendarez-Torres*, we are bound by it. For that reason, we held in *Skidmore* that an enhancement imposed pursuant to § 924(e)(1) based on a defendant's three separate violent felonies is proper under *Apprendi*.

Morris attempts to avoid our clear holding in *Skidmore* by arguing that he challenges not the fact of the convictions, but the determination that those convictions were committed on occasions different from one another. That determination, he argues, should have been submitted to the jury under the reasonable doubt standard. Morris presents no authority for parsing out the recidivism inquiry in that manner. The logic of both *Skidmore* and *Almendarez-Torres* applies to this aspect of the recidivism inquiry, which merely involves a determination of which prior convictions will be considered. The *Almendarez-Torres* Court even cited § 924(e) of the ACCA as one of many examples for the proposition that "prior commission of a serious crime—is as typical a sentencing factor as one might imagine." 523 U.S. at 230. Moreover, the recidivism enhancement at issue in *Almendarez-Torres* also limited the convictions that could be considered—to include only aggravated felonies. Morris has failed to articulate a reasoned basis for distinguishing the factor at issue here from other factors traditionally considered in enhancing a sentence based on recidivism.

In fact, this precise argument was recently rejected by the Second Circuit in *United States v. Santiago*, 268 F.3d 151 (2d Cir. 2001). In *Santiago*, the court held that *Apprendi's* recidivism exception encompasses the issue of whether prior convictions arose from offenses "committed on occasions different from one another." *Id.* at 155. The court first reasoned that "the separateness of the convictions is not a fact which is different in kind from the types of facts already left to the sentencing judge by *Almendarez-Torres* and *Apprendi* . . ." *Id.* at 156. Second, the court noted that recidivism has traditionally been an issue for the judge, and that treating recidivism as a substantive criminal offense would be problematic, including the risk of significant prejudice to the defendant from introducing evidence of the defendant's prior crimes to the jury. *Id.* Finally, the court noted that *Almendarez-Torres* distinguished recidivism as relating to the punishment alone, not to the commission of the offense, which was true of the § 924(e)(1) inquiry as well. *Id.* Accordingly, the court rejected the defendant's attempt to cabin the separateness inquiry under *Apprendi*. We agree with *Santiago*, and hold consistent with *Skidmore* that the enhancement in this case was proper under *Apprendi*.

Morris next contends that the convictions fail the § 924(e)(1) inquiry, in that they were not "committed on occasions different from one another," and that the district court erred in holding otherwise. Specifically, Morris challenges the determination that the two aggravated discharge convictions constituted convictions on occasions different from one another. In *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994) (*en banc*), this court examined the ACCA's "committed on occasions different from one another" language of § 924(e)(1) and provided a framework for making that determination. *Hudspeth* held that in analyzing the separateness requirement, the court should consider the "nature of the crimes, the identities of the

victims, and the locations," and should determine whether the crime involved distinct criminal aggressions where the perpetrator had the opportunity to cease and desist from his criminal actions at any time but failed to do so. *Id.* at 1019-20. Regarding the timing of multiple crimes, the *Hudspeth* court centered the inquiry on whether the crimes were simultaneous or sequential. *Id.* at 1021. Morris argues that the crimes here were similar in time and location and therefore fail that test.

A brief review of our other cases reveals that the shooting offenses in this case were "committed on occasions different from one another" as we have interpreted that provision. For instance, in *Hudspeth*, the perpetrator in a 35-minute time period broke into three businesses that were all connected as part of a strip mall. *Id.* at 1018-19. Although the burglaries were committed at the same approximate time and in the same general location, the *Hudspeth* majority held that each entry into a new business establishment constituted a distinct criminal aggression and that the perpetrator had the opportunity to withdraw but chose to commit the additional criminal act. *Id.* at 1022. Accordingly, the court held that the offenses were not a single criminal act, and thus were crimes committed on occasions different from one another under the ACCA. Similarly, in *United States v. Schieman*, 894 F.2d 909 (7th Cir. 1990), a pre-*Hudspeth* case, the court found separate criminal episodes where a defendant committed a burglary and, three blocks away when approached by an officer, he knocked the officer to the ground and fled. *Id.* at 910. The court held that the battery and burglary fell within the ACCA because they involved separate crimes against separate victims in separate locations. *Id.* at 913. *Schieman* therefore establishes that even "'one crime hard on the heels of another can be a separate and distinct criminal episode.'" *Hudspeth*, 42 F.3d at 1020, *quoting United States v. Godinez*, 998 F.2d 471, 472 (7th Cir. 1993). Finally, in *United States v. Cardenas*,

217 F.3d 491 (7ᵗʰ Cir. 2000), the court recognized that even related crimes, similar in nature, can fall within § 924(e)(1) despite temporal proximity. In *Cardenas*, the defendant sold crack cocaine to confidential informants with the understanding that they would return to purchase more if they found it acceptable. *Id.* at 492. Forty-five minutes later, those same informants completed a second purchase from him approximately a half block away from the location of the first purchase. *Id.* Despite the similarities in time, location and nature of the crime, the court held that the offenses were committed on occasions different from one another because the first sale was not contingent on the second one, and *Cardenas* had time to change his mind and to refuse to engage in the second sale. *Id.* Because the offenses involved not a single agreement, but rather separate transactions, the court applied § 924(e).

Like those cases, the two offenses committed by Morris, although close in time and location, involved distinct criminal aggressions from which he had an opportunity to cease and withdraw. The facts underlying the offenses are not in dispute. Morris shot at victim Derek Kye from his automobile at the corner of 17ᵗʰ and Pine, and then drove away. Kye then ran to his aunt's home and told his aunt and cousin what had happened. His cousin, Lebaron Pettis, left the home to seek help presumably because they did not have a phone at the house. Pettis ran to 1501 Martin Luther King Drive and was knocking on the door when Morris drove up and fired three shots at Pettis. Pettis escaped injury. Those shooting incidents were similar in nature, but involved different victims at different locations and times. Although they were close in time and proximity, they involved distinct criminal aggressions. Morris had left the scene of the first incident, and that was a complete criminal act at that time. He certainly had the opportunity at that time to drive away from the scene and cease his criminal actions. Instead, he chose to drive back and to initiate an

additional criminal aggression, this time shooting at Pettis. That is the type of criminal action that, although "hard on the heels of the earlier offense," nevertheless constitutes an offense on an "occasion different from the other" under the ACCA. It is legally indistinguishable from the type of conduct we reviewed in *Hudspeth*, *Schieman*, and *Cardenas*, and therefore the district court appropriately applied the enhancement under the ACCA. Because that alone supports the sentence in the case, we need not address the other sentencing issues raised by Morris. The decision of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*