In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2766

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES ELLIOTT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 09 CR 225—**Philip P. Simon**, *Chief Judge*.

ARGUED FEBRUARY 24, 2012—DECIDED DECEMBER 20, 2012

Before MANION and ROVNER, *Circuit Judges*, and
COLEMAN, *District Judge.**

ROVNER, *Circuit Judge.* After he pleaded guilty to a felon-
in-possession charge, 18 U.S.C. § 922(g)(1), James Elliott

---

* The Honorable Sharon Johnson Coleman, of the United States
District Court for the Northern District of Illinois, sitting by
designation.

was sentenced as an armed career criminal based on the district court's finding that a series of three robberies he perpetrated in a five-day period when he was eighteen years old were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1). Elliot challenges that finding, contending that he had a right to have a jury, rather than the judge, assess the nature of his prior crimes, and that our decision in *United States v. Hudspeth*, 42 F.3d 1015, 1019-22 (7th Cir. 1994) (en banc), *abrogated on other grounds by Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254 (2005), should be over-ruled. We affirm.

## I.

On October 22, 2009, police officers in Merrillville, Indiana were dispatched to a residence on complaints about an unwanted person being present. They arrived to discover Elliott sitting on the front porch of the residence with his hands in his pockets. Elliott briefly removed his hands from his pockets when asked to do so, but reinserted them as the officers began to approach him, assuring the officers that he had nothing in them. In fact, he did. When one of the officers grabbed Elliott's right hand, he discovered a loaded .22-caliber revolver in his pocket.

Because Elliott previously had been convicted of six felony offenses—including burglary, theft, and operating a vehicle while intoxicated—federal law made it illegal for him to possess a firearm. 18 U.S.C. § 922(g)(1). A

grand jury subsequently indicted him on a felon-in-possession charge. The government then filed a notice indicating that it intended to seek an enhanced penalty based on his criminal history pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). In relevant part, that statute specifies a minimum prison term of fifteen years (and a maximum term of life) for a felon-in-possession who has three previous convictions for violent felonies or serious drug offenses "committed on occasions different from one another." § 924(e)(1). Burglary qualifies as a violent crime for purposes of the ACCA. § 924(e)(2)(B)(ii). The government contended that Elliott's convictions for three burglaries he committed over a period of five days in 1998 rendered him subject to the enhanced penalty specified by the ACCA. Without that enhancement, he would otherwise have been subject to a maximum prison term of 10 years. § 924(a)(2).

Elliott, although he did not contest the fact of his prior convictions, nonetheless opposed the enhancement. As relevant here, he contended that whether the three burglaries were committed on occasions different from one another constituted a factual question as to which the Fifth and Sixth Amendments, and the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), entitled him to a jury trial. Second, Elliott argued that because the three burglaries took place over a period of several days during what he regarded as a single criminal episode, the court should find that they were not committed on occasions

different from one another, and that consequently he was not subject to the enhanced penalty.[1]

The district court rejected both arguments in a written opinion. *United States v. Elliott*, 2011 WL 3273466 (N.D. Ind. Aug. 1, 2011). The court invoked *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998), as its authority to make determinations regarding Elliott's criminal history. 2011 WL 3273466, at *4; *see also* R. 18-2 at 20-22. And, looking to our en banc decision in *Hudspeth*, the court found that the three 1998 burglaries were committed on occasions different from one another. 2011 WL 3273466, at *2-*3. The court emphasized that the burglaries were committed sequentially rather than simultaneously, and that significantly more time had passed between the burglaries than was the case in *Hudspeth*, affording Elliott the opportunity after each burglary to cease his criminal conduct. *Id.*, at *3. The court added at sentencing: "[C]learly when somebody commits three burglaries over the course of five days, under the way the Seventh Circuit and for that matter, every other circuit it appears, has interpreted [section] 924[(e)], those would all be qualifying convictions." R. 18-2 at 19.

---

[1] Elliott also argued below that the bright-line approach to the different-occasions inquiry that we adopted in *Hudspeth* renders the enhanced penalties imposed by the ACCA irrational and excessive, in violation of the Eighth Amendment's ban on cruel and unusual punishments. The district court rejected that contention, and Elliott does not renew the argument here.

The court proceeded to sentence Elliott to the minimum term of 180 months specified by the ACCA. That term was eight months below the low end of the sentencing range recommended by the Sentencing Guidelines.

## II.

Elliott renews his challenge to the armed career criminal enhancement on appeal. As a threshold matter, he contends that whether the three burglaries for which he previously had been convicted occurred on occasions different from one another was a fact-intensive issue that he was entitled to have a jury resolve. He acknowledges that under *Almendarez-Torres*, the district judge is authorized to make certain findings regarding a defendant's criminal history, but contends that whether his prior crimes occurred on occasions different from one another represents a distinct type of inquiry that *Almendarez-Torres* does not authorize the judge to make. As to the substance of the ACCA inquiry, Elliott urges this court to overrule its en banc decision in *Hudspeth*, a step that he believes would pave the way to recognition that the three burglaries he committed in 1998 were indivisible components of a single, multi-day crime spree and thus were not committed on occasions different from one another. Both arguments present questions of law that we review de novo. *Kirkland v. United States*, 687 F.3d 878, 882-83 (7th Cir. 2012); *United States v. Trennell*, 290 F.3d 881, 889 (7th Cir. 2002).

As to the first issue, the district judge was empowered to determine whether Elliott committed the burglaries

on occasions different from one another. The Supreme Court in *Almendarez-Torres* held that a defendant's recidivism is not an element of the offense which must be found by a jury beyond a reasonable doubt, but rather is a sentencing factor that may be found by the sentencing judge, even when recidivism increases the statutory maximum penalty to which the defendant is exposed. 523 U.S. at 239, 243-46, 118 S. Ct. at 1228-29, 1230-32. *Almendarez-Torres* has remained good law even as the Court in later decisions has recognized a defendant's right to a jury finding on other factors that expose the defendant to a longer sentence. *See Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215 (1999); *Apprendi v. New Jersey*, *supra*, 530 U.S. 466, 120 S. Ct. 2348; *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005); *United States v. O'Brien*, 130 S. Ct. 2169 (2010). Indeed, each of these cases has expressly cited the fact of a prior conviction as an exception to the rule it stated. *Jones*, 526 U.S. at 243 n.6, 119 S. Ct. at 1224 n.6; *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63; *Blakely*, 542 U.S. at 301, 124 S. Ct. at 2536; *Booker*, 543 U.S. at 244, 125 S. Ct. at 756; *O'Brien*, 130 S. Ct. at 2174.[2]

---

[2] This is not to say that the future of *Almendarez-Torres* is secure. Justice Thomas's concurrence in *Shepard v. United States* remarked that "*Almendarez-Torres* . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided." 544 U.S. 13, 27, 125 S. Ct. 1254, 1264 (2005) (Thomas, J., concurring in part and concurring in the judgment). We ourselves have observed:

(continued...)

Elliott has a point when he stresses that whether a defendant's prior crimes occurred on occasions different from one another is a question that looks beyond "the fact of a prior conviction," *see Blakely*, 542 U.S. at 301, 124 S. Ct. at 2536 (quoting *Apprendi*), and for that matter beyond the elements essential to that conviction, *see Taylor v. United States*, 495 U.S. 575, 599, 602, 110 S. Ct. 2143, 2158, 2160 (1990); *see also Nijhawan v. Holder*, 557 U.S. 29, 33-36, 129 S. Ct. 2294, 2298-2300 (2009) (distinguishing statutory provisions which call for categorical inquiry into nature of defendant's prior conviction from those which call for circumstance-specific inquiry into facts underlying defendant's prior conviction). The facts that inform the determination of whether prior crimes occurred on different occasions—including the times and dates, places, and victims of those crimes—usually do not constitute essential elements of a convic-

---

[2] (...continued)

*Almendarez-Torres* is vulnerable to being overruled not because of *Shepard* but because of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). *Booker* holds that there is a right to a jury trial and to the reasonable-doubt standard in a sentencing proceeding (that is, the Sixth Amendment is applicable) if the judge's findings dictate an increase in the maximum penalty. *Id.* at 756. Findings made under the Armed Career Criminal Act do that. So if logic rules, those findings too are subject to the Sixth Amendment. . . .

*United States v. Browning*, 436 F.3d 780, 782 (7th Cir. 2006). We added, however, that "the continued authority of *Almendarez-Torres* is not for us to decide." *Id.*

tion. *See, e.g.*, *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983) ("An 'essential' or 'material' element of the crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction. Only in rare cases is time a material element of the offense charged, even where continuing offenses such as conspiracy are alleged.") (citation omitted); *United States v. Muhammad*, 928 F.2d 1461, 1470 (7th Cir. 1991) ("[T]he location where the offense took place is not an 'essential' or 'material' element of the crime as that term was defined in *Cina*."); *cf. United States v. Alhalabi*, 443 F.3d 605, 613 (7th Cir. 2006) (payment amounts referenced in food stamp fraud charges were not material elements of the offense). On the other hand, because facts of this nature serve to define the scope of a crime, provide notice to the defendant of what precisely he is charged with doing so that he can prepare a defense, and protect him against double jeopardy, *see United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008); *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008); *United States v. Andrus*, 775 F.2d 825, 843-44 (7th Cir. 1985); *United States v. Horton*, 676 F.2d 1165, 1169 (7th Cir. 1982), they are closely interwoven with the essential elements of an offense. We recently observed that "in rejecting arguments after *Apprendi* that the separate occasions determination falls outside the *Almendarez-Torres* exception, we and other circuits have gone to great lengths to explain that the facts related to whether prior convictions occurred on different occasions cannot be easily distinguished from the facts related to the existence of the prior convic-

tions." *Kirkland v. United States*, *supra*, 687 F.3d at 890 (coll. cases). Moreover, facts such as these, although they are not normally essential elements of a conviction, will frequently, if not usually, be disclosed in charging documents, plea agreements, findings of fact resulting from a bench trial, and other materials that the Supreme Court described as "conclusive records made or used in adjudicating guilt." *Shepard v. United States*, *supra*, 544 U.S. at 21, 125 S. Ct. at 1260. Our decision in *Kirkland* emphasizes that a court's inquiry as to the different-occasions prong of the ACCA is limited to such documents. 687 F.3d at 888-89.

Consequently, this court, like our sister circuits, has construed *Almendarez-Torres* to permit a district court to make a finding for purposes of the ACCA as to whether a defendant committed three or more violent felonies or serious drug offenses on occasions different from one another. *United States v. Hendrix*, 509 F.3d 362, 375-76 (7th Cir. 2007); *United States v. Morris*, 293 F.3d 1010, 1012-13 (7th Cir. 2002); *United States v. Skidmore*, 254 F.3d 635, 642 (7th Cir. 2001) (coll. cases from other circuits). Indeed, our decisions have explicitly rejected the very argument that Elliot makes here—namely, that determining the relationship of a defendant's prior crimes to one another is beyond the scope of the finding that *Almendarez-Torres* permits a judge to make. *See Hendrix*, 509 F.3d at 375-76 (citing *United States v. Schlifer*, 403 F.3d 849, 852 (7th Cir. 2005) (determination whether defendant's prior crimes were unrelated, for purposes of U.S.S.G. § 4B1.1, is not beyond scope of inquiry judge may make under *Almendarez-Torres*)); *Morris*, 293 F.3d at 1012-13. As we observed in *Morris*:

The *Almendarez-Torres* Court even cited § 924(e) of the ACCA as one of many examples for the proposition that "prior commission of a serious crime—is as typical a sentencing factor as one might imagine." 523 U.S. at 230, 118 S. Ct. 1219. Moreover, the recidivism enhancement at issue in *Almendarez–Torres* also limited the convictions that could be considered—to include only aggravated felonies. Morris has failed to articulate a reasoned basis for distinguishing the factor at issue here from other factors traditionally considered in enhancing a sentence based on recidivism.

293 F.3d at 1012-13. Thus, unless and until the Supreme Court overrules *Almendarez-Torres* or confines its holding solely to the fact of a prior conviction, as opposed to the nature and/or sequence of a defendant's prior crimes, a district judge properly may make the findings required by the ACCA.

*Hudspeth* supplies the answer to the second question presented by Elliott's appeal—whether the three burglaries he committed in 1998 occurred on occasions different from one another. Our discussion of the different-occasions inquiry in *Hudspeth* began with the recognition of widespread agreement among the circuit courts that a defendant will be subject to the ACCA enhancement "if each of [his] prior convictions arose out of a '*separate and distinct criminal episode.*'" 42 F.3d at 1019 (quoting *United States v. Schieman*, 894 F.2d 909, 911 (7th Cir. 1990) (emphasis in *Hudspeth*) & coll. cases). Factors relevant to that assessment include the nature of the crimes, the identities of the victims, and the

locations where the crimes took place. *Id.* We also recognized that the timing is a relevant consideration, but to a limited extent: crimes that occur simultaneously will be deemed to have occurred on a single occasion; but the passage of even a small amount of time between crimes—10 minutes in *Schieman*—may well suffice to separate them for purposes of the ACCA. *Id.* at 1919-20. What really matters, we emphasized, is the opportunity of the perpetrator to terminate his wrongdoing. *Id.* at 1020. Thus, even when a defendant has committed a multi-crime spree over a short period of time, each offense comprising the spree will be considered to have occurred on a separate occasion so long as the defendant at each step had the opportunity to stop and proceed no further. *Id.* (citing *United States v. Brady*, 988 F.2d 664, 668-69 (6th Cir. 1993) (en banc)). When a defendant commits multiple crimes simultaneously—as when he robs more than one person at the same time, or commits essentially one act that violates multiple criminal statutes—there is no dividing point between the offenses that affords him the chance to desist from further criminal activity. *See id.* at 1020, 1021. "In contrast, a defendant who commits sequential crimes has the opportunity at each and every turn to withdraw from his criminal activity." *Id.* at 1021. Therefore, we concluded, a court's inquiry as to the timing of the prior offenses "is simple: were the crimes *simultaneous* or were they *sequential*?" *Id.* at 1021 (emphasis in original).

Having adopted that bright-line rule, our assessment of the prior crimes at issue in *Hudspeth* was straightforward. The defendant and his accomplices had committed a series of three burglaries over a period of 36 minutes

against three adjoining businesses in a strip mall: they had first pried open the door of a dry cleaners, then used a sledgehammer to break through a wall separating the cleaners from the donut shop next door, and from there forced open a door connecting the donut shop with an insurance company; along the way, they ransacked all three businesses. Because the defendant had burglarized the three businesses in sequence rather than simultaneously, we deemed the burglaries to have occurred on different occasions for purposes of the ACCA:

> Entry into each successive business reflected a clear and deliberate choice to commit a "distinct aggression," [*United States v.*] *Godinez*, 998 F.2d [471] at 473 [(7th Cir. 1993)]. At any given point in time during his crime spree, Hudspeth was free to cease and desist from further criminal activity. He instead chose to continue. Because of his three decisions to enter each successive business, it is evident that he intended "to engage in a separate criminal episode." [*United States v.*] *Tisdale*, 921 F.2d [1095] at 1099 [10th Cir. 1990)]; *see also Godinez*, 998 F.2d at 472 ("one crime hard on the heels of another can be a 'separate and distinct criminal episode,' as *Schieman* itself shows.").

42 F.3d at 1022.[3]

---

[3] Our understanding of the facts surrounding the burglaries at issue in *Hudspeth* rested to a significant extent on the police reports regarding those burglaries. *See* 42 F.3d at 1018 & n.3. The Supreme Court's subsequent decision in *Shepard*

(continued...)

*Hudspeth*'s result and rationale leave no question that Elliott's three prior burglaries likewise occurred on different occasions. The burglaries involved different victims and different homes, and they took place sequentially rather than simultaneously. Elliott, like Hudspeth, thus had an opportunity after each burglary to contemplate what he was doing and abandon his course of criminal conduct. Indeed, Elliott's burglaries took place over the course of five days—and one or more days apart from one another—rather than over the course of 36 minutes, as was the case in *Hudspeth*. Elliott thus had far more of an opportunity to change course and desist from wrongdoing than did Hudspeth. *See*, *e.g.*, *United States v. Nigg*, 667 F.3d 929, 936 (7th Cir.) (three armed robberies committed over six days constituted separate criminal episodes under *Hudspeth*), *cert. denied*, 132 S. Ct. 2704 (2012); *United States v. Hunter*, 418 F. App'x 490, 493-94 (7th Cir. 2011) (non-precedential decision) (recognizing that it would be frivolous to contend that robberies of five different victims in different locations on same day constituted a single criminal episode, notwithstanding fact that they all

---

[3]  (...continued)

disapproved reliance on such extra-judicial records in assessing the nature of a defendant's prior convictions. 544 U.S. at 26, 125 S. Ct. at 1263. To the extent *Hudspeth* deemed it proper to resort to such documents in evaluating the relationship of a defendant's prior crimes to one another, our decision on that point is no longer good law, as we recognized in *Kirkland*, 687 F.3d at 886-87 & n.9.

stemmed from same bank robbery, as robberies were committed sequentially rather than simultaneously); *United States v. Reyna*, 327 F. App'x 660, 661 (7th Cir. 2009) (non-precedential decision) (agreeing that it would be frivolous to argue that burglaries of three different homes over six days constituted a single criminal episode under *Hudspeth*, as defendant had "the opportunity to change his mind before undertaking each successive burglary"); *United States v. Hale*, 227 F. App'x 506, 508-10 (7th Cir. 2007) (non-precedential decision) (two robberies of different businesses on same day constituted separate offenses under *Hudspeth*); *United States v. Morris*, *supra*, 293 F.3d at 1014 (under *Hudspeth* and other precedents, two shootings on same night, "although close in time and location, involved distinct criminal aggressions from which [defendant] had an opportunity to cease and withdraw"); *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000) (three sales of crack cocaine to informants over two days, with two sales taking place only 45 minutes and half a block apart, amounted to distinct criminal episodes under *Hudspeth*); *United States v. Gilbert*, 45 F.3d 1163, 1168-69 (7th Cir. 1995) (burglaries of five public school buildings over three-day period constituted distinct episodes, where burglaries "involved separate schools, different victims, and distinct locations").

*Hudspeth* makes the result in this appeal a foregone conclusion; but that does not mean that overruling *Hudspeth*, as Elliott urges us to do, would lead to a different outcome. Overruling a precedent obviously "is not a step

we take lightly," *NewPage Wis. Sys. Inc. v. United Steel Workers Int'l Union*, 651 F.3d 775, 779 (7th Cir. 2011), and overruling an en banc decision is something that only the full court could do, *United States v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005). Moreover, we typically reserve reexamination of a precedent for a case in which abandoning that precedent would make a difference. *E.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011). Here, as the district court implied when it observed that Elliott's prior burglaries would meet the ACCA's different-occasions test under the law of this or any other circuit, even setting aside *Hudspeth*, Elliott is unlikely to prevail in his contention that his prior burglaries constituted a single rather than multiple crimes.

The rationale of the dissents in *Hudspeth* is illuminating in this regard. Both dissents were critical of the bright-line rule distinguishing simultaneous crimes from sequential ones. 42 F.3d at 1026-27 (Flaum, J., concurring in part and dissenting in part); *id.* at 1035, 1037 (Ripple, J., concurring in part and dissenting in part). Both argued for a less rigid approach that would allow more pragmatic judgments in examining a set of prior crimes to determine whether they should be treated as separate or distinct criminal episodes. Judge Flaum suggested that "a nuanced, fact-based approach better resolves how many occasions are encompassed within a particular course of conduct." *Id.* at 1027. Judge Ripple observed that the court's adoption of a bright-line test constituted a departure from its prior decisions in this area, which "ha[d] reflected a thoughtful and measured approach to the task required by the statute—identifying

those criminals whose repetitive behavior requires a special degree of isolation from society." *Id.* at 1035; *see also id.* at 1037. He argued that "[f]actors of time and distance must be evaluated in terms of the legislative intent in order to identify and segregate the true recidivist." *Id.* at 1036. Looking at the facts in *Hudspeth* through that lens, Judge Ripple concluded that the series of three burglaries should be treated as a single episode:

> In a very short period of time, Mr. Hudspeth and his accomplices, with a sledgehammer and other tools, broke into three adjoining businesses in one location and ransacked them. Their arrival with such tools designed to expedite the penetration of the walls between the adjacent businesses reflects a clear plan for the group to work together to break through from one business to another. This venture did not comprise "distinct aggressions," [*Godinez*, 998 F.2d at 473], but rather a singular, continuous course of conduct that depended on the spatial proximity of these stores. . . .

*Id.* Judge Flaum agreed:

> I view the fact that Hudspeth and his partners entered several attached but separate stores at sequential addresses, as opposed to, for example, several departments of a single larger store, to be a mere fortuity in these circumstances.

*Id.* at 1027.

It is worth pointing out that neither dissent signaled any disagreement with the holdings of pre-*Hudspeth*

decisions like *Schieman* and *Godinez*, which were given significant attention in the majority decision in *Hudspeth* and which treated crimes committed within a very short time of one another as separate episodes for purposes of the ACCA. *See Schieman*, 894 F.2d 909 (defendant assaulted police officer who approached him to question him about burglary he had committed some five to 10 minutes earlier and three blocks away); *Godinez*, 998 F.2d 471 (defendant kidnapped woman in order to use her car in robbery, which he committed slightly more than one hour after the kidnapping). Judge Ripple's dissent, in fact, recognized that the sort of recidivism that Congress meant to punish more severely when it enacted the ACCA "can be manifest in relatively short time frames and in situations not far removed from each other," and his dissent cited many cases to that effect. 42 F.3d at 1035 & n.20.

Instead, the dissenters believed that the majority's error in *Hudspeth* lay in emphasizing the sequential nature of a defendant's criminal acts to the exclusion of other circumstances suggesting that those acts ought to be treated as part of a single criminal episode. Illustratively, Judge Ripple pointed out that under the majority's simultaneous-versus-sequential test, a defendant who enters a dwelling and shoots multiple people simultaneously with one burst of automatic weapons fire commits a single aggression, but if he then walks into another room to shoot another person, he commits a second, distinct aggression. *Id.* at 1037. Judge Flaum similarly noted that the majority's way at looking at sequencing attributed artificial importance to

fortuitous circumstances: thus, in *Hudspeth*, the sequential burglaries of adjoining but separate businesses were treated as distinct criminal episodes, whereas an unlawful entry into a single business, and the ensuing break-in into several locked offices within that business, would be deemed one criminal episode. *Id.* at 1026.

Overruling *Hudspeth* would remove just one of the obstacles to Elliott's position. It would do away with *Hudspeth*'s bright-line rule and leave room for the more nuanced judgments for which the dissenters in that case advocated. If the facts underlying Elliott's three prior burglaries were comparable to those at issue in *Hudspeth*, the door might be open to Elliott's contention that his prior burglaries constituted one criminal episode for purposes of the ACCA. But Elliott did not burglarize, one right after the other, three business in the same mall or three adjoining townhouses. He burglarized three different residences on different days.[4] Even with *Hudspeth* cleared from his path, Elliott still would have to contend with a wealth of authority, including precedents like *Schieman* and *Godinez*, which treat crimes committed at different locations and at different times—even when separated only by a matter

---

[4] Elliott's counsel informs us, although this fact is not in the record, that each of the residences Elliott burglarized were apartments essentially in the same complex. Even so, it is clear from the record Elliott did not burglarize the apartments seriatim on the same day.

of minutes or hours—as distinct for purposes of the ACCA. *See United States v. Hale*, *supra*, 227 F. App'x at 510 ("even if we were to employ a case-by-case approach, as Hale advocates, the facts of his case do not suggest that his two robberies [of different businesses on same day] could be considered one"); *United States v. Godinez*, *supra*, 998 F.2d at 473 ("Godinez . . . committed his crimes against different victims, in different places, more than an hour apart. It would strain language considerably, without serving any purpose plausibly attributed to Congress, to treat the kidnapping and the robbery as a single 'occasion.'"); *Schieman*, 894 F.2d at 913 ("Schieman had successfully completed the burglary of Jenny's Cake Fair and safely escaped from the premises before committing the subsequent offense [five to 10 minutes later]."); *see also United States v. Spears*, 443 F.3d 1358, 1360 (11th Cir. 2006) (two robberies of multiple victims in same parking lot within two minutes and 25 to 30 feet of one another); *United States v. Deroo*, 304 F.3d 824, 828 (8th Cir. 2002) ("Crimes occurring even minutes apart can qualify [as distinct criminal acts], however, if they have different victims and are committed in different locations.") (citing *United States v. Gray*, 85 F.3d 380, 381 (8th Cir. 1996) (two burglaries of nearby houses within 25 minutes), and *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993) (two assaults, inside and outside of same bar, within 25 minutes)); *United States v. Hobbs*, 136 F.3d 384, 387-89 (4th Cir. 1998) (three burglaries of three different stores, at least a mile apart from one another, in space of one hour); *United States v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993) (successive

burglaries of two different homes separated by distance of 12 to 13 miles and driving time of 20 to 30 minutes); *United States v. Brady*, *supra*, 988 F.2d at 668-70 (robberies at different locations, 45 minutes apart); *United States v. Antonie*, 953 F.2d 496, 499 (9th Cir. 1991) (two armed robberies, at two different businesses in different towns, 40 minutes apart); *United States v. Tisdale*, *supra*, 921 F.2d at 1098-99 (burglaries of two businesses and post office located inside of same shopping mall in course of one night); *United States v. Washington*, 898 F.2d 439, 442 (5th Cir. 1990) (successive robberies of same clerk at same convenience market several hours apart).

Elliott's theory is that his prior burglaries comprised a single crime spree triggered by a need for money to support his drug habit. But on that view, even a long string of crimes, committed over a much greater expanse of time than Elliott's burglaries were, could be construed as a single criminal episode. An addiction to drugs or alcohol, for example, may be at the root of criminal behavior that spans years rather than days. (Elliott's own addiction to multiple narcotics appears to have plagued him for a substantial period of his life.) There might be some sense in treating a series of crimes as essentially one, indivisible episode, particularly when the crimes occurred in a discrete part of the defendant's past and are explained by something like an addiction that the defendant later overcame. The district judge in this case himself entertained "long thoughts" about how Elliott's prior burglaries were best characterized. 2011 WL 3273466, at *1; R. 18-2 at 20.

Nonetheless, it is difficult to reconcile Elliott's theory with the language that the ACCA uses. The statute refers to crimes "committed on occasions different from one another." § 924(e)(1). When a day or more has passed between offenses, especially when the offenses were committed at different locations and against different victims, logic suggests that these crimes occurred on different occasions. *See*, *e.g.*, *United States v. Ross*, 569 F.3d 821, 823-24 (8th Cir. 2009) (two crack cocaine sales made three days apart to same informant); *United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005) (seven residential burglaries occurring on six different dates, some within days of one another and two on same day); *United States v. Stearns*, 387 F.3d 104, 108-09 (1st Cir. 2004) (two burglaries of same warehouse on consecutive days); *United States v. Richardson*, 230 F.3d 1297, 1300 (11th Cir. 2000) (per curiam) (two burglaries of different buildings at least 30 hours apart), *abrogated on other grounds by Shepard v. United States, supra*, 544 U.S. 13, 125 S. Ct. 1254; (*United States v. Melina-Gutierrez*, 980 F.2d 980, 983 (5th Cir. 1992) (three burglaries committed within weeks of one another); *United States v. Roach*, 958 F.2d 679, 683-84 (6th Cir. 1992) (three drug sales made over course of two weeks, two of which were separated by one day). Elliott himself cites no case to the contrary. The cases that he does cite are readily distinguishable, in that they involve crimes that overlapped temporally, *see United States v. Willoughby*, 653 F.3d 738, 744-45 (8th Cir. 2011) (near-simultaneous sales of marijuana to police officer and informant as they stood side by side in defendant's living room); *United*

*States v. Towne*, 870 F.2d 880, 891 (2d Cir. 1989) (kidnap and rape of same victim), or took place on the heels of one another, *see United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir. 1997) (defendant was guarding victim at the site of the first burglary while his accomplices proceeded to burglarize next-door residence in same duplex); *United States v. Graves*, 60 F.3d 1183, 1187 (6th Cir. 1995) (defendant's assault on police officer while attempting to flee from the site of his burglary). The district court was therefore correct when it observed that Elliot's burglaries would not be treated as a single criminal episode under any jurisdiction's precedent.

### III.

The district court committed no error in finding that Elliott's burglaries occurred on different occasions for purposes of the ACCA. The burglaries occurred on different days and involved different residences and victims. Under any plausible construction of the statute's different-occasions language, the burglaries constituted distinct criminal episodes. Reconsideration of the approach that this court adopted in *Hudspeth* would not lead to a different result on the facts of this case. To the extent that the statute produces results that are perceived as unjust, the problem is one for Congress to fix rather than this court.

AFFIRMED.