Cordy, J.
(dissenting in part, with whom Spina, J., joins). I agree that the defendant’s motions to suppress were properly denied. I disagree that the Massachusetts armed career criminal act, G. L. c. 269, § 10G (ACCA), is ambiguous, and would adopt what I perceive to be the plain meaning of its words: previous convictions are convictions occurring prior to the ACCA violation for offenses “arising from separate” criminal incidents. Crimes arising from separate incidents are crimes committed on different occasions as contrasted with multiple crimes arising out of a single occasion or criminal episode.
The issue is purely one of legislative intent at the time of enactment, and, absent any evidence to the contrary, I would not *471 read into the statute a “recidivist philosophy,” rather than an intent to ensure public safety by significantly increasing the penalties for persons who commit crimes with firearms after having been convicted of multiple serious felonies.
In my view, the Massachusetts statute should be interpreted as the Federal ACCA statute has been by virtually every Federal Circuit and District Court to undertake the task.[1] 18 U.S.C. § 924(e) (2006) (offenses “committed on occasions different from one another”). So long as the prior offenses of which the defendant has been convicted arise out of different criminal episodes (whether termed different occasions, occurrences, incidents, or incidences), they should qualify as separate previous convictions for purposes of the Massachusetts ACCA statute.
The court’s interpretation would essentially incorporate all crimes, no matter how separate in time, victim, or nature, into a single conviction (for ACCA purposes) if they were eventually resolved by guilty plea or trial in the same prosecution. For example, a person who commits a string of armed robberies in Suffolk County over a period of months and who is eventually apprehended, linked to, charged with, and convicted of all of the robberies, in a combined prosecution, would have only “one” prior felony conviction for purposes of the Massachusetts ACCA statute — no matter how many robberies he is convicted of committing.
Further, the court suggests that prior convictions must be sequential. In other words, the first conviction must occur before the second predicate crime and its prosecution and conviction, and the second conviction must occur before the commission and prosecution of the third crime, and so on — apparently, so that the recidivist felon has multiple opportunities to correct his criminal behavior before facing far greater punishment when he once again commits a serious felony, this time with a firearm. Hence, by way of example, if the armed robber is prosecuted in Suffolk County, and, subsequent to his conviction, it is determined that before his conviction he had committed a series of armed robberies in Hampden County and is, accordingly, now prosecuted and convicted of those armed robberies, he would still only have one prior conviction under the Massachusetts ACCA statute *472 when and if he commits his next armed felony. This could not have been what the Legislature intended.[2]
The fact that some State courts have interpreted their own armed career criminal statutes (variously worded) differently (and as this court now would), based on their view of what their Legislatures intended to punish, is not terribly relevant or revealing.[3] Other State courts have concluded the opposite.[4] There is no consensus as to how such statutes, no matter how differently worded or intended, must be interpreted.
I would not infuse our analysis with hindsight doubts about whether the statute has served as an effective deterrent, or whether it might seemingly prove unduly harsh in some circumstances. That is the Legislature’s responsibility, not ours. And I would not use the modest facts in this case, in which the defendant’s prior convictions were for five drug sales, each occurring on a different day during a three-week period, as an excuse to broadly transplant a new policy that has no traceable origin in legislative history, onto a statute plainly intended to protect the *473 public from felons with multiple felony convictions who use firearms in committing new crimes.

See, e.g., United States v. Elliott, 703 F.3d 378, 383 (7th Cir. 2012), cert. denied, 133 S. Ct. 2359 (2013), and United States v. Letterlough, 63 F.3d 332, 335 (4th Cir.), cert. denied, 516 U.S. 955 (1995), and the numerous cases cited therein.

The court’s interpretation would also result in the following: An individual is arrested for a serious drug offense and is released on personal recognizance. He is then arrested for another serious drug offense and is released on bail. He is finally arrested for an armed robbery and is held without bail. All three separate crimes (for which he has been separately arrested and charged) are eventually resolved by guilty pleas and sentencing in a single plea and sentencing proceeding. Result — one prior conviction only.

For example, the court cites a Nebraska case, State v. Ellis, 214 Neb. 172, 175 (1983), in support of its proposition that habitual offender statutes should be interpreted in a manner that allows felons the opportunity to “reform their ways.” The Nebraska Supreme Court was, of course, interpreting the meaning and legislative intent behind its own statute, which provided that a habitual criminal is one who has previously “been twice convicted of [a] crime, sentenced and committed to prison.” Id. at 172-173. See Neb. Rev. Stat. § 29-2221. The court, in a four-to-three decision, concluded that where the defendant was convicted of two crimes (robbery and the use of a firearm in the course of the robbery), occurring on the same day, and for which he was sentenced on the same day, he had only one prior conviction and sentence under its statute. Ellis, supra at 172-173, 175-176. The court went on to more broadly endorse the “recidivist philosophy” behind its habitual offender statute, see id. at 175, over a vigorous dissent noting that the court had “chosen to substitute doubtful sociological assumptions (without legislative history to show that the Legislature shared its view) for the logical construction of [the] statute.” Id. at 177 (White, J., dissenting).

See, e.g., Watson v. State, 392 So. 2d 1274, 1279 (Ala. Crim. App. 1980); Linn v. State, 658 P.2d 150, 152 (Alaska Ct. App. 1983); Knight v. State, 277 Ark. 213, 215-216 (1982); Stradt v. State, 608 N.W.2d 28, 29-30 (Iowa 2000); Rushing v. State, 461 So. 2d 710, 713 (Miss. 1984).