In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2278

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SERGIO GAMEZ,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:19-cr-114 — **Jon E. DeGuilio**, *Judge.*

———————————

ARGUED APRIL 11, 2023 — DECIDED AUGUST 9, 2023

———————————

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Sergio Gamez received a 15-year
sentence for being a felon in possession of a firearm after the
district court found that his three prior Indiana felony convic-
tions qualified him for the Armed Career Criminal Act's sen-
tencing enhancement in 18 U.S.C. § 924(e). Challenging that
sentence, Gamez contends that one of his Indiana convic-
tions—aiding and abetting arson—is not a violent felony and
therefore should not count as a third strike under the statute.

We are unpersuaded by two of Gamez's three distinct challenges to the district court's application of the ACCA enhancement. The district court was right to conclude that Gamez's three prior Indiana felony convictions occurred "on occasions different from one another" as required by 18 U.S.C. § 924(e)(1). And so too do we agree that the state's choice to charge Gamez as an aider-and-abettor of arson and not a principal does not independently preclude the ACCA enhancement.

What we cannot decide today is a question on the meaning and requirements of Indiana law: whether Indiana arson requires a fire or burning. By its terms, the state's criminal code does not require a fire or burning as an element of arson. But there are indications that Indiana state courts have interpreted and applied the arson statute to require proof of burning to sustain an arson conviction. The answer matters to Gamez, for it marks the difference between Indiana arson as an ACCA violent felony or not. Because the issue has not been addressed by the Indiana Supreme Court, and because the answer brings material sentencing consequences for Gamez, the most prudent course is to invite the state's highest court to resolve the question. So we certify the question set forth in this opinion to the Indiana Supreme Court.

## I

In August 2019 police responded to a 911 call of a reported kidnapping at a gas station near Hammond, Indiana and discovered Sergio Gamez, the purported kidnapper, in possession of a Winchester rifle. Gamez was on probation at the time for a prior robbery conviction. Indeed, eight days earlier Gamez had removed his GPS-tracking ankle bracelet, prompting a LaPorte County Community Corrections officer

to file charges for escape. All of these events led federal prosecutors to get involved and charge Gamez with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In time Gamez pleaded guilty to this offense.

At the sentencing hearing three years later, in July 2022, the government pointed to Gamez's criminal history to support a 15-year minimum sentence mandated by Congress in the Armed Career Criminal Act. The sentencing enhancement applies to § 922(g)(1) offenders with "three previous convictions … for a violent felony … committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The government saw Gamez's three prior state convictions under Indiana law—two for robbery and one for aiding and abetting arson—as violent felonies under the definition in § 924(e)(2)(B).

Gamez never disputed that his two robbery convictions qualified as violent felonies. But he disagreed that his conviction for aiding and abetting arson met the statutory definition. He contended that Indiana's arson statute covered too broad a range of conduct to be considered a "violent felony" within the meaning of ACCA.

The district court rejected Gamez's position, found him to be an armed career criminal, and sentenced him to the 15-year minimum sentence required by § 924(e). Gamez now appeals.

**II**

As a preliminary matter, Gamez believes the district court erroneously applied the ACCA enhancement regardless of whether his arson conviction qualifies as a violent felony. He argues that the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), precluded the district court from finding that his three predicate offenses

occurred "on occasions different from one another" as required by 18 U.S.C. § 924(e)(1). Gamez believes that *Almendarez-Torres*'s holding—that a sentencing judge may find the fact of a prior conviction—should not extend to a judge's finding that prior convictions occurred on separate occasions. See 523 U.S. at 239, 243–46.

Gamez recognizes that his position is foreclosed by our decision in *United States v. Elliott*, 703 F.3d 378 (7th Cir. 2012), which held that a sentencing judge may make ACCA's separate occasions finding "unless and until the Supreme Court overrules *Almendarez-Torres* or confines its holding solely to the fact of a prior conviction." *Id.* at 383. So Gamez asks us to overrule *Elliott* in light of the Supreme Court's decisions in *Descamps v. United States*, 570 U.S. 254 (2013), *Mathis v. United States*, 579 U.S. 500 (2016), and *United States v. Wooden*, 142 S. Ct. 1063 (2022), which he believes call *Almendarez-Torres* into question.

We rejected an identical challenge to the separate occasions inquiry in a decision published after Gamez filed this appeal. In *United States v. Hatley*, we concluded that these same Supreme Court decisions had "not overruled or limited *Almendarez-Torres*," and we recognized that other circuits agree. 61 F.4th 536, 542 (7th Cir. 2023) (collecting cases). Even if *Hatley* did not squarely foreclose Gamez's argument, the district court's finding here is harmless. No reasonable jury could have concluded that Gamez's convictions—robbery in 2009, aiding and abetting arson in 2011, and robbery in 2016—occurred on the same occasion.

## III

### A

The sole remaining question then is whether Gamez's prior Indiana conviction for aiding and abetting arson is a violent felony within the meaning of 18 U.S.C. § 924(e). We answer that question by conducting our own independent review of ACCA. See *United States v. Duncan*, 833 F.3d 751, 753 (7th Cir. 2016).

ACCA's sentencing enhancement applies to any person convicted of being a felon in possession of a firearm who also has three prior convictions "for a violent felony … committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A qualifying "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion." 18 U.S.C. § 924(e)(2)(B)(ii). By listing these crimes, but then not separately defining them, "Congress referred only to their usual or (in our terminology) generic versions" of the offenses. *Mathis*, 579 U.S. at 503. Referring to a crime's generic definition solves a state–federal coordination problem: Congress directed courts to "extend[ ] the range of predicate offenses to all crimes having certain common characteristics … regardless of how they were labeled by state law." *Taylor v. United States*, 495 U.S. 575, 589 (1990).

To determine whether Gamez's prior arson conviction meets the generic definition of arson, we use the so-called categorical approach, a method of statutory interpretation first described by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). Our court has explained and applied this approach many times before. See, e.g., *Duncan*, 833 F.3d at 754;

*United States v. Misleveck*, 735 F.3d 983, 984 (7th Cir. 2013); *United States v. Ruth*, 966 F.3d 642, 646 (7th Cir. 2020).

In applying the categorical framework, we ask whether Indiana arson's "statutory definition substantially corresponds to 'generic' [arson]." *Taylor*, 495 U.S. at 602. We do not look to the facts of Gamez's actual commission of the offense. See *id.* Gamez's Indiana arson conviction will qualify as an ACCA predicate "only if the statute's elements are the same as, or narrower than," the elements of generic arson. *Descamps*, 570 U.S. at 257. If the elements of Indiana arson are broader, the sentencing enhancement otherwise prescribed by § 924(e) does not apply. See *Mathis*, 579 U.S. at 509 (citing *Taylor*, 495 U.S. at 602). The focus on elements, the Supreme Court has explained, requires us to identify and examine only "the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 504 (quoting *Elements*, *Black's Law Dictionary* (10th ed. 2014)).

B

Start with Gamez's emphasis that his prior Indiana conviction was for aiding and abetting arson—the state charged him as an accomplice, not a principal. In offering the observation, Gamez does not dispute that in Indiana and under federal law, aiders and abettors of arson are treated as principals. He instead says the accomplice–principal distinction matters because, by his measure, Indiana's aiding-and-abetting statute covers more types of criminal intent than aiding-and-abetting liability under federal law. In short, Gamez believes Indiana law is too broad to qualify for ACCA's sentencing enhancement regardless of whether we conclude that Indiana arson is a violent felony. We are not persuaded.

We have recently joined many other circuit courts in holding that "aiding and abetting a crime of violence is a crime of violence." *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023) (collecting cases). Our reasoning took direction from the Supreme Court's rejection of a similar challenge to aiding and abetting theft under California law. In *Gonzales v. Duenas-Alvarez*, the Court recognized that "every jurisdiction—all States and the Federal Government—has 'expressly abrogated the distinction among principals'" and aiders and abettors. 549 U.S. at 189–90 (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 13.1(e) (2d ed. 2003)). Applying that principle within the categorical-approach framework, the Court concluded that aiding and abetting theft under California law fell within the definition of theft for the federal statute. See *id.* at 190–92 (analyzing California's "natural and probable consequences" doctrine underlying aiding-and-abetting liability). Having concluded that Indiana arson is a crime of violence under ACCA, we could end our analysis there.

But even under a formal categorical analysis that compares Indiana's aiding-and-abetting law with the generic definition, as Gamez urges us to undertake, we find no overbreadth. By our measure, Indiana aiders and abettors are subject to substantially the same criminal intent standard as aiders and abettors under a generic definition. In Indiana, a person aids and abets a crime if he "knowingly or intentionally aids, induces, or causes another person to commit an offense." Ind. Code § 35-41-2-4. Under a generic definition of aiding and abetting, "a person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission." *Rosemond v. United States*, 572 U.S. 65, 76 (2014); see also *Alfred v. Garland*, 64 F.4th 1025, 1042 (9th Cir. 2023) (en banc) (overruling *United States v. Valdivia-Flores*, 876

F.3d 1201 (9th Cir. 2017)) (surveying state and federal law to define generic aiding-and-abetting liability as "intentionally aid[ing] or abet[ting] another in the commission of the crime").

Gamez insists that "knowledge" required for Indiana aiding-and-abetting liability makes the state's definition broader than the generic one. Not so in our view. The Supreme Court has found the generic aiding-and-abetting intent requirement is met "when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." *Rosemond*, 572 U.S. at 77. That interpretation substantially corresponds with the Indiana statute's knowledge requirement, which is met when someone has "knowledge that he is helping in the commission of the charged crime," by "knowingly support[ing], help[ing], or assist[ing] in [its] commission." *Powell v. State*, 769 N.E.2d 1128, 1132 (Ind. 2002). Both standards impose criminal liability on a person who "'participate[s] in [the crime] as something that he wishes to bring about' and 'seek by his action to make succeed.'" *Rosemond*, 572 U.S. at 76–77 (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)); see also *Chappell v. State*, 966 N.E.2d 124, 130 (Ind. Ct. App. 2012) (imposing aiding-and-abetting liability when a defendant knows he aided the commission of a crime and knows his behavior facilitated its commission).

Our conclusion aligns with the other appellate courts to consider similar state aiding-and-abetting statutes under the categorical approach. See *Alfred*, 64 F.4th at 1044; *Bourtzakis v. United States AG*, 940 F.3d 616, 622 (11th Cir. 2019) ("[D]espite this difference in language [between knowledge and intent]

the mens-rea requirements for accomplice liability under the [state] statute and the federal Act do not diverge.").

And so too is our conclusion on all fours with our reasoning in *Worthen*. If we adopted Gamez's view—that aiding and abetting arson under Indiana law does not qualify as a crime of violence for purposes of ACCA's sentencing enhancement—we would necessarily also conclude that aiding and abetting any crime of violence in Indiana is not a crime of violence. That result cannot be squared with the "universal principle, emphasized by the Supreme Court in *Duenas-Alvarez*, that criminal law treats principals and aiders and abettors alike." *Worthen*, 60 F.4th at 1071. Under Gamez's approach, no Indiana offense would qualify as a crime of violence. But we have no reason to believe that Congress's enumeration of generic offenses in ACCA, or the categorical approach the Supreme Court set forth in *Taylor*, operates this way. See *United States v. Cammorto*, 859 F.3d 311, 316 (4th Cir. 2017) (rejecting a similar challenge as "untenable" because it would preclude any categorical match).

So we conclude that Gamez's arson conviction—if arson is a violent felony within ACCA's definition in § 924(e)(2)(B)(ii)—can qualify for the enhancement even though the state charged him as an aider and abettor and not a principal.

## C

That brings us to Gamez's second challenge to the ACCA enhancement that raises a question we are unable to resolve today: Is arson under Indiana Code § 35-43-1-1(a) broader than the generic definition required under § 924(e)?

We begin with the categorical-approach framework and the enumerated offense of arson in § 924(e)(B)(ii). Our court has defined generic arson as the "intentional or malicious burning of any property." *Misleveck*, 735 F.3d at 988. This definition aligns with the consensus among states that "the modern, generic crime of arson involves the burning of real or personal property." *United States v. Knight*, 606 F.3d 171, 174 (4th Cir. 2010) (collecting cases); see also *Misleveck*, 735 F.3d at 988 (collecting cases).

Now compare the generic definition of arson to Indiana's definition. At the time of Gamez's 2011 conviction, the Indiana Code made it a crime for a person to

> by means of fire, explosive, or destructive device, knowingly or intentionally damage[ ]:
>
> > (1) a dwelling of another person without the other person's consent;
> >
> > (2) property of any person under circumstances that endanger human life;
> >
> > (3) property of another person without the other person's consent if the pecuniary loss is at least five thousand dollars ($5,000); or
> >
> > (4) a structure used for religious worship without the consent of the owner of the structure.

Ind. Code § 35-43-1-1(a). Gamez does not dispute that the mental state and types of property in the Indiana statute substantially correspond with the generic definition of arson we articulated in *Misleveck*. He instead focuses on one textual difference to show that arson under Indiana law is not a violent

felony under ACCA: the Indiana statute includes "destructive devices" as a means of committing arson, but the generic offense does not.

The Indiana legislature added destructive devices as a means of committing arson in March 2002 as part of post-9/11 efforts nationwide to strengthen antiterrorism laws. See Act of March 26, 2002, Ind. Pub. L. No. 123-2002 § 36. In Gamez's view, the inclusion of "destructive devices" makes the state law broader than generic arson. He emphasizes that the statute defines destructive devices to include non-incendiary weapons such as overpressure devices. See Ind. Code § 35-47.5-2-4(a). Connecting that definition to the arson statute, Gamez insists that a person could be convicted of arson in Indiana by damaging another person's dwelling without using fire. By way of a hypothetical example, he suggests that a compressed-air device propelled by carbon dioxide would qualify as a non-incendiary "destructive device" under Indiana's definition that could cause property damage amounting to arson under Indiana Code § 35-43-1-1. This observation leads Gamez to conclude that Indiana arson criminalizes more conduct than generic arson and is therefore categorically overbroad.

While Gamez's position has considerable appeal, our analysis cannot stop with the facial difference he identifies in the Indiana statute. Our inquiry also "depends on what Indiana courts require to convict a person of [arson]." *Duncan*, 833 F.3d at 754. When applying the categorical approach, we are "bound by the [Indiana] Supreme Court's interpretation of state law, including its determination of the elements of [Indiana's arson statute]." *Johnson v. United States*, 559 U.S. 133, 138 (2010). A difference in stated means—arson by way of

destructive device—may not be enough to find overbreadth where the core elements of the offense are the same once we account for how the Indiana courts have described what it takes to commit arson.

Examining Indiana's case law reveals that arson convictions under state law may have the essential element that Gamez insists they do not: a fire or burning. This conclusion comes from the Indiana Supreme Court's so-called "corpus delicti" rule, which requires the state in every criminal proceeding to offer "proof that the specific crime charged has actually been committed by someone." *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017) (quoting *Walker v. State*, 233 N.E.2d 483, 488 (Ind. 1968)); see also *Grey v. State*, 404 N.E.2d 1348, 1350 (Ind. 1980) ("[T]he corpus delicti of a crime must be proved beyond a reasonable doubt in order to sustain a conviction.").

The Indiana courts have stated the corpus delicti of arson—the two things that the state must prove to sustain every conviction—as "the burning of the property in question and a criminal agency as a cause of that burning." *Williams v. State*, 837 N.E.2d 615, 618 (Ind. Ct. App. 2005); see also *Simmons v. State*, 129 N.E.2d 121, 123 (Ind. 1955). So in every arson case, even though it is not expressly written into the statute, Indiana courts seem to require prosecutors to prove a burning and criminal intent. See *Williams*, 837 N.E.2d at 618 (citing *Fox v. State*, 384 N.E.2d 1159, 1166 n.16 (Ind. Ct. App. 1979)).

Our examination of Indiana law, however, leaves us uncertain as to how the corpus delicti rule applies in the case Gamez proposes, where a person commits arson by using a non-incendiary destructive device that does not result in a burning. We have yet to find an Indiana court that has

squarely addressed this issue following the legislature's addition of "destructive device" to the statute in 2002. Instead, we have found at least one Indiana court that interpreted the word "damage" in the Indiana statute broadly to include non-incendiary property damage. See, *e.g.*, *Pedigo v. State*, 443 N.E.2d 347, 350 (Ind. Ct. App. 1982). But we have also found cases like *Williams*—decided in 2005 and thus after the 2002 amendment—applying the corpus delicti rule and leading us to conclude otherwise. See 837 N.E.2d at 618. In the end, we are not sure whether Indiana arson requires a fire or burning of property to sustain a conviction as the statute currently stands.

The categorical approach has real consequences for defendants like Gamez who may have been convicted of offenses falling outside those that qualify for sentencing penalties. In recognizing the importance of this question for Gamez, and many other defendants facing similar statutory penalties, we have decided to give the "respect due [to] state courts as the final arbiters of state law" and ask the Indiana Supreme Court for its interpretation of the state's criminal code before proceeding with our review of Gamez's sentence. *United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022).

## IV

Indiana permits "any federal circuit court of appeals" to certify any "question of Indiana law … that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. R. App. P. 64(a). The question of whether Indiana arson requires a fire or burning is a matter of Indiana law that is essential to resolving Gamez's appeal. We therefore respectfully request that the Indiana Supreme Court exercise its discretion to answer the following certified question:

> Indiana law states that arson occurs when a person "knowingly or intentionally damages" certain property "by means of fire, explosive, or destructive device." Ind. Code § 35-43-1-1(a). Indiana case law, however, has stated that the corpus delicti of arson "consists of the burning of the property in question and a criminal agency as a cause of that burning." *Williams v. State*, 837 N.E.2d 615, 618 (Ind. Ct. App. 2005); see also *Simmons v. State*, 129 N.E.2d 121, 123 (Ind. 1955). Under Indiana law, need the state prove that the defendant burned property in order to obtain a conviction for arson? Or is it sufficient to prove that the defendant more generally caused damage to property "by means of fire, explosive, or destructive device?"

The question is CERTIFIED. All further proceedings in this Court are STAYED while the Indiana Supreme Court considers this matter.