REVISED JUNE 24, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 2, 2009

Charles R. Fulbruge III
Clerk

No. 08-20557

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

PABLO VELEZ-ALDERETE, also known as Pablo E Velez,
also known as Pablo Alderrette Velez, also known as Pablo Velez Alderete,
also known as Pablo Alderetti Velez

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. 4:08-CR-277-ALL

Before KING, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:

Pablo Velez-Alderete pleaded guilty to being found in the United States after having been deported. The district court sentenced him to 70 months' imprisonment based on, among other things, a 16-level enhancement for a prior conviction of a crime of violence due to Velez-Alderete's arson conviction in Texas. Now, Velez-Alderete asserts that the district court erred in calculating his sentence by concluding that his prior conviction was a crime of violence. According to him, Texas's arson statute does not fall within the generic,

contemporary meaning of arson because it proscribes the burning of personal property without explicitly requiring a threat of harm to a person. Because we conclude that the generic meaning of arson involves the willful and malicious burning of property and that Texas's arson statute falls within this meaning, we affirm Velez-Alderete's sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2008, Pablo Velez-Alderete was indicted in the United States District Court for the Southern District of Texas for violating 8 U.S.C. § 1326(a) and (b)(2) by being found in the United States after having been deported. Velez-Alderete pleaded guilty to the charge on June 3, 2008, and the district court sentenced him to 70 months' imprisonment and three years' supervised release on August 22, 2008.

During the June 3, 2008 rearraignment at which Velez-Alderete pleaded guilty, the prosecutor proffered facts showing that: Velez-Alderete is a citizen of Mexico; he was convicted on October 30, 1995, of arson and possession of a controlled substance in Houston, Texas; he was deported to Mexico from Hidalgo, Texas, on July 25, 1997; he was found in Houston, Texas, on January 15, 2004; he was convicted of manufacturing and delivering a controlled substance on June 6, 2005; and he had not obtained consent to reapply for admission into the United States from the Attorney General or the Department of Homeland Security. Velez-Alderete agreed to the accuracy of these facts.

In the presentence report (the "PSR"), the probation officer determined that Velez-Alderete had an offense level of 21 by starting with a base offense level of eight, see U.S.S.G. § 2L1.2(a); adding a 16-level, crime-of-violence enhancement for the 1995 arson conviction, see U.S.S.G. § 2L1.2(b)(1)(A)(ii); and

subtracting three levels for acceptance of responsibility, see U.S.S.G. § 3E1.1(a), (b).

Velez-Alderete filed objections to the PSR, contesting, among other things, the calculation of his offense level. He alleged that his arson conviction was not a crime of violence because Texas's arson statute is broader than the generic, contemporary definition of arson.

At the sentencing hearing, Velez-Alderete reurged his objections; however, the district court was unpersuaded by Velez-Alderete's argument that the 16-level enhancement should not apply. As a result, the court calculated that the Sentencing Guidelines (the "Guidelines") provided an advisory sentencing range of 70 to 87 months' imprisonment. The district court sentenced Velez-Alderete to 70 months' imprisonment and three-years' supervised release.

Velez-Alderete filed a timely notice of appeal challenging the district court's application of the 16-level enhancement based on his Texas arson conviction.

## II. DISCUSSION

We review the district court's interpretation or application of the Guidelines de novo. See United States v. Gonzalez-Terrazas, 529 F.3d 293, 296 (5th Cir. 2008); United States v. Juarez-Duarte, 513 F.3d 204, 208 (5th Cir. 2008).

For a conviction of reentering the country after having been deported, the Guidelines provide a 16-level enhancement if the defendant was previously deported after a conviction for a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii); see also United States v. Mungia-Portillo, 484 F.3d 813, 815 (5th Cir. 2007). We

have said that a "crime of violence," based on the Application Notes to § 2L1.2, consists of:

> (1) any of a list of enumerated offenses . . . or (2) "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

United States v. Ramirez, 557 F.3d 200, 205 (5th Cir. 2009) (quoting U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii)); see also United States v. Gomez-Gomez, 547 F.3d 242, 244 (5th Cir. 2008) (en banc) ("[A] prior offense is a crime of violence if it: (1) has physical force as an element, or (2) qualifies as one of the enumerated offenses.").

The Application Notes list arson as an enumerated offense. See U.S.S.G. § 2L1.2, cmt. n. 1(B)(iii). Velez-Alderete argues that his Texas arson conviction does not fall within the meaning of "arson" as enumerated in the Application Notes. To define arson, as with any enumerated offense, we apply "a 'common sense approach'" and give the offense its "'generic, contemporary meaning.'" United States v. Fierro-Reyna, 466 F.3d 324, 327 (5th Cir. 2006) (quoting United States v. Sanchez-Ruedas, 452 F.3d 409, 412 (5th Cir. 2006)); see also Mungia-Portillo, 484 F.3d at 816. In order to determine the generic, contemporary meaning of arson, we may look to, among other things, modern state codes, federal statutes, and the Model Penal Code. United States v. Muñoz-Ortenza, 563 F.3d 112, 115 (5th Cir. 2009); Fierro-Reyna, 466 F.3d at 327.[1]

In determining whether Velez-Alderete's prior conviction qualifies as arson according to the Guidelines, "we do not look to his actual conduct." Gomez-Gomez, 547 F.3d at 244. "Instead, we consider the offense categorically by

---

[1] Thus, we are unpersuaded by Velez-Alderete's assertion that we should define arson by reference to other enumerated offenses in the Application Notes.

looking 'only to the fact of conviction and the statutory definition of the prior offense.'" Id. (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)). If the full range of conduct prohibited by the Texas arson statute falls under the generic, contemporary meaning of arson, then Velez-Alderete's prior conviction was for a "crime of violence." See id. at 244–45.

In Texas, the statute under which Velez-Alderete was convicted stated that a person commits the offense of arson "if he starts a fire or causes an explosion with intent to destroy or damage":

(1) any vegetation, fence, or structure on open-space land; or
(2) any building, habitation, or vehicle:
   (A) knowing that it is within the limits of an incorporated city or town;
   (B) knowing that it is insured against damage or destruction;
   (C) knowing that it is subject to a mortgage or other security interest;
   (D) knowing that it is located on property belonging to another;
   (E) knowing that it has located within it property belonging to another; or
   (F) when he is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

TEX. PENAL CODE ANN. § 28.02 (1993).

Velez-Alderete contends that under the common law and the Model Penal Code, the definition of arson involves an explicit risk of harm to a person, not merely property, and that the generic meaning of arson covers property likely to be occupied.[2] That is, he argues that the generic definition of arson requires

---

[2] The Model Penal Code states that a "person is guilty of arson . . . if he starts a fire or causes an explosion for the purpose of: (a) destroying a building or occupied structure of another." MODEL PENAL CODE § 220.1(1)(a).

more than the mere burning of personal property without an explicit risk of harm to a person. Texas's statute prohibits conduct outside the range of this proposed definition, according to Velez-Alderete, because it proscribes the burning of private property that does not involve the threat of harm to a person. For example, the Texas statute covers burning a vehicle when the perpetrator knows it is insured against damage or, to use Velez-Alderete's example, when the perpetrator is reckless concerning whether the burning will endanger the safety of another's property.[3]

Velez-Alderete's narrow definition of arson, however, ignores the consensus among state statutes that defines contemporary arson as involving the malicious burning of property, personal or real, without requiring that the burning threaten harm to a person. See United States v. Velasquez-Reyes, 427 F.3d 1227, 1230–31 & n.2 (9th Cir. 2005) (rejecting the same objection to a 16-level enhancement based on a broader interstate consensus as evidenced by the statutes of 36 states, including Texas, that extend arson to personal property)[4];

_____

[3] We note that Velez-Alderete's example actually reflects the provision under which he was indicted: setting fire to a vehicle while being reckless as to whether the burning would endanger the life of a person or the safety of another's property per § 28.02(a)(2)(F).

[4] Velasquez-Reyes cites the 2005 version of the arson statutes in Arizona, Arkansas, California, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Minnesota, Mississippi, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, West Virginia, Wisconsin, and Wyoming.
Still today, none of these state statutes requires the threat of harm to a person. See, e.g., ARIZ. REV. STAT. ANN. § 13-1703 (covering the burning of "a structure or property"); ARK. CODE ANN. § 5-38-301 ("[a]ny property, whether his or her own or property of another person, for the purpose of collecting any insurance for the property"); CAL. PENAL CODE § 451 ("any structure, forest land, or property"); COLO. REV. STAT. ANN. § 18-4-103 ("any property of another without his consent"); FLA. STAT. ANN. § 806.01 ("any structure . . . under any circumstances" and defining "structure" as, among other things, "any vehicle, vessel,

see also United States v. Whaley, 552 F.3d 904, 906 (8th Cir. 2009) (stating that "a review of criminal codes shows that the contemporary meaning of arson has

---

watercraft, or aircraft"); GA. CODE ANN. § 16-7-61 ("vehicle, railroad car, watercraft, [or] aircraft"); IDAHO CODE ANN. § 18-804 ("[a]ny real or personal property of another"); ILL. COMP. STAT. ANN. 5/20-1 ("any personal property having a value of $150 or more, of another without his consent"); IND. CODE ANN. § 35-43-1-1 ("property of another person without the other person's consent if the pecuniary loss is at least five thousand dollars"); IOWA CODE ANN. § 712.3 ("personal property the value of which exceeds five hundred dollars"); KAN. STAT. ANN. § 21-3718 ("any building or property which is not a dwelling in which another person has any interest without the consent of such other person"); LA. REV. STAT. ANN. § 14:52 ("any property of another, without the consent of another"); ME. REV. STAT. ANN. tit. 17-A, § 802 ("[o]n his own property or the property of another . . . which recklessly endangers . . . the property of another"); MINN. STAT. ANN. § 609.562 ("any other real or personal property valued at more than $1,000"); MISS. CODE ANN. § 97-17-7 ("any personal property of whatsoever class or character"); MONT. CODE ANN. § 45-6-103 ("a structure, vehicle, personal property . . . that exceeds $1,000 in value . . . that is property of another without consent"); NEB. REV. STAT. ANN. § 28-504 ("any property of another without his consent"); N.H. REV. STAT. ANN. § 634:1 ("unlawfully damages the property of another"); N.J. STAT. ANN. § 2C:17-1 ("[w]ith the purpose of collecting insurance for the destruction or damage to such property"); N.M. STAT. ANN. § 30-17-5 ("any property, whether the person's own property or the property of another person, to collect insurance for the loss"); N.Y. PENAL LAW § 150.01 ("property of another without consent of the owner by intentionally starting a fire"); N.D. CENT. CODE § 12.1-21-01 ("his own real or personal property for the purpose of collecting insurance for the loss"); OHIO REV. CODE ANN. § 2909.03 ("any property of another without the other person's consent"); OKLA. STAT. ANN. tit. 21, § 1403 ("any property whatsoever, including automobiles . . ., such property being worth not less than Fifty Dollars ($50.00), whether the property of himself or another"); OR. REV. STAT. ANN. § 164.315 ("[a]ny property of another and the damages to the property exceed $750"); PA. CONS. STAT. ANN. § 3301 ("places any personal property of another having a value that exceeds $5,000 . . . in danger of damage or destruction"); R.I. GEN. LAWS § 11-4-4 ("of any property of [the offender] or another with the purpose to defraud an insurer"); S.C. CODE ANN. § 16-11-110 ("personal property . . . whether the property of himself or another"); S.D. CODIFIED LAWS § 22-33-9.2 ("with intent to . . . [d]estroy or damage any property, whether his or her own or another's, to collect insurance for such loss"); TENN. CODE ANN. § 39-14-303 ("knowingly damag[ing] any personal property . . . by means of fire . . . [w]ith intent to destroy or damage any such property for any unlawful purpose"); UTAH CODE ANN. § 76-6-102 ("the property of another"); VT. STAT. ANN. tit. 13, § 504 ("of any personal property of whatsoever class or character, not less than $25.00 in value and the property of another person"); W. VA. CODE ANN. § 61-3-3 ("any personal property of any class or character, of the value of not less than five hundred dollars, and the property of another person"); WIS. STAT. ANN. § 943.03 ("any property of another without the person's consent, if the property is not a building and has a value of $100 or more"); WYO. STAT. ANN. § 6-3-102 ("with intent to destroy or damage any property to cause collection of insurance for the loss").

diverged from the common-law definition" in holding that a prior Missouri conviction for "knowingly burning or exploding" constitutes a violent felony as arson under the Armed Career Criminal Act). Further, the federal arson statute similarly extends to personal property without regard to the possible harm to a person. It forbids the setting fire to any vessel, machinery, building materials, supplies, and military and naval stores. See 18 U.S.C. § 81; see also Velasquez-Reyes, 427 F.3d at 1231 (stating that "the federal statute lends guidance to the meaning of the term 'arson' as used in the Sentencing Guidelines" and that the federal statute "extends to personal property"). All of these statutes include as arson the burning of personal property without any separate requirement of possible harm to a person. Indeed, Velez-Alderete fails to point to any decision supporting his definition of arson as explicitly requiring the threat of harm to a person; instead, courts considering whether arson is a crime of violence agree that the generic, contemporary definition of arson involves a "'willful and malicious burning' of property." See Velasquez-Reyes, 427 F.3d at 1230 (quoting United States v. Hathaway, 949 F.2d 609, 610 (2d Cir. 1991)); see also, e.g., Whaley, 552 F.3d at 907 ("[W]e conclude that the generic offense of arson, for purposes of the sentence enhancement in [the Armed Career Criminal Act], has as elements the malicious burning of real or personal property of another."); United States v. Craig, 236 F. App'x 863, 865 (4th Cir. 2007) (holding that "the burning of personal property with intent to defraud . . . substantially corresponds to the generic definition of arson for the purposes of [the Armed Career Criminal Act]"); United States v. Miller, 246 F. App'x 369, 372 (6th Cir. 2007) (stating that "[t]he widely accepted 'generic' definition of arson thus includes the knowing burning of personal property without consent or with

8

unlawful intent" in holding that Tennessee's arson statute constitutes a violent felony under the Armed Career Criminal Act).[5] We join our sister Courts of Appeals in holding that the generic, contemporary definition of arson involves a willful and malicious burning of property.

Turning to Texas's arson statute, we conclude that it falls within the meaning of this enumerated offense. Texas proscribes starting a fire "with intent to destroy or damage" various types of property ranging from structures and vegetation on open-space land to vehicles when the perpetrator knows that the vehicle is insured or when he is reckless concerning the safety of the property of another. All of these variations involve a willful and malicious burning of property. Velez-Alderete's 1995 Texas arson conviction was thus for a crime of violence. As a result, the district court did not err in applying the 16-level enhancement to Velez-Alderete's offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). In light of this conclusion, we need not consider Velez-Alderete's additional assertions concerning whether Texas's arson statute involves a threat of force or whether the district court's alleged error was harmless.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Velez-Alderete's sentence.

---

[5] "The [Armed Career Criminal Act] increases the mandatory minimum sentence for an offender who has prior convictions for a violent felony . . . . The definition of 'violent felony' is identical to that of 'crime of violence' in the Guidelines context." United States v. Mohr, 554 F.3d 604, 609 (5th Cir. 2009). Thus, decisions determining the generic, contemporary definition of arson under the Armed Career Criminal Act are instructive here. See id.