In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 13-1855

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES MISLEVECK,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:12-cr-00105-WMC-2 — **William M. Conley**, *Chief Judge*.

_____

ARGUED SEPTEMBER 26, 2013 — DECIDED NOVEMBER 25, 2013

_____

Before POSNER, MANION, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to being a felon in possession of a gun, in violation of 18 U.S.C. § 922(g)(1), which carries a maximum punishment of 10 years in prison. But the judge found that because the defendant had three prior convictions of felonies classified as "violent" under the Armed Career Criminal Act, 18 U.S.C. § 924(e), he was subject to a mandatory minimum sentence of 15 years. § 924(e)(1). So that was the sentence the

judge imposed. But one of the prior convictions had been for arson, and the defendant argues that the particular arson statute that he had been convicted under does not punish only a "violent" felony within the meaning of the Armed Career Criminal Act. If that is right, he is not an armed career criminal and the judge should not have sentenced him to more than 10 years.

The statute, Wis. Stat. § 943.03, is entitled "Arson of property other than building" and provides that "whoever, by means of fire, intentionally damages any property of another without the person's consent, if the property is not a building and has a value of $100 or more, is guilty of a Class I felony," which carries a maximum penalty of 3½ years in prison. § 939.50(3)(i). The question is whether a violation of section 943.03 is a "violent felony" within the meaning of the Armed Career Criminal Act. A statute that immediately precedes section 943.03 in the Wisconsin code punishes arson of buildings and carries a 40-year maximum sentence. §§ 939.50(3)(c), 943.02.

According to the presentence report the defendant had stolen a car from a parking lot and (weirdly) had torched it in a field in order to erase his and his accomplices' fingerprints. But the circumstances of his offense are not germane, because in deciding whether a defendant has been convicted of a "violent felony" we are to look only at the statutory elements of the offense and not at the defendant's conduct that triggered the application of the statute to him. *Descamps v. United States*, 133 S. Ct. 2276, 2285–86 (2013); *Shepard v. United States*, 544 U.S. 13, 16 (2005); *Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Howze*, 343 F.3d 919, 921 (7th Cir. 2003).

So far as concerns this case, the Armed Career Criminal Act defines "violent felony" as any crime punishable by imprisonment for more than one year that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The last clause ("or otherwise involves conduct that presents a serious potential risk of physical injury to another") has been held to denote *additional* offenses, beyond those named, that create a serious potential risk of physical injury to another, rather than confining the enumerated offenses of burglary, arson, and extortion ("involves use of explosives" defines a means of committing a crime, rather than a specific crime) to cases in which such a crime gives rise to such a risk. *James v. United States*, 550 U.S. 192, 199–200 (2007); *Taylor v. United States, supra*, 495 U.S. at 597–98; *United States v. Bonilla*, 687 F.3d 188, 192 (4th Cir. 2012); *United States v. Grisel*, 488 F.3d 844, 849–50 n. 3 (9th Cir. 2007) (en banc).

So arson doesn't have to create a serious potential risk of physical injury in order to be a "violent felony" within the meaning of the Act. But the absence of such a requirement creates an interpretive problem. Like burglary and extortion, arson embraces acts that vary greatly in dangerousness. Intentionally setting fire to a building is likely to do extensive damage, and, if the building is occupied, to endanger life. But intentionally setting fire to an item of personal property worth $100? Suppose your wife pays $125 for a hat. She brings it home. You think the hat hideous—also overpriced. In a rage you light a fire in the fireplace and fling the hat into it, where it is consumed by the flames. If this is Wisconsin, you've committed a Class I felony. But is it a *violent* felony within the meaning of the Armed Career Criminal Act? If

you do this sort of thing twice more, and are later convicted of possession of a gun in violation of 18 U.S.C. § 922(g)(1), should you be subject to a 15-year minimum sentence for that violation because of your three arson convictions?

As noted earlier, we look to the statutory elements of the defendant's offense rather than to the details of his conduct. But we don't stop with those elements. The Supreme Court does not interpret the Armed Career Criminal Act to allow states to trigger the application of the Act by attaching the label of "arson" or "burglary" or "extortion" to conduct re-mote from the Act's concerns, which center on violence and earn for the malefactor a hefty additional sentence. Suppose a state, eager to stamp out cigarette smoking, defines light-ing a cigarette as felony arson. The federal courts would not consider this to be arson within the meaning of the Armed Career Criminal Act. It doesn't fit the normal understanding of arson, and it involves no serious risk of violence. It's called arson, but it doesn't fit the genre of arson. See *Taylor v. United States*, *supra*, 495 U.S. at 590–91; *United States v. Howze*, *supra*, 343 F.3d at 921. A bat flies like a bird, but it is not a generic bird.

The defendant argues that the Supreme Court has chosen the Model Penal Code's definition of arson to be the defini-tion of generic arson and by doing so has excluded setting fire to anything besides a building. That's wrong. In ruling that driving under the influence of alcohol or drugs is not a felony, the Supreme Court in *Begay v. United States*, 553 U.S. 137, 144–45 (2008), remarked that the enumerated offenses (arson, burglary, extortion) "all typically involve purposeful, 'violent,' and 'aggressive' conduct," see also *Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011); *Chambers v. United States*,

555 U.S. 122, 127–29 (2009), and specifically that "'arson' is causing a fire or explosion with 'the purpose of,' *e.g.*, 'destroying a *building* … of another' or 'damaging any property … to collect insurance." *Begay v. United States*, *supra*, 553 U.S. at 145, quoting *ALI Model Penal Code* § 220.1 (1985) (emphasis added, ellipses in original). Our defendant argues that what he did in setting fire to personal property was not generic arson (that is, arson as defined by the Supreme Court for use in applying the Armed Career Criminal Act) because a building is not personal property. But that ignores the "*e.g.*" (*exempli gratia*—for the sake of example) that the Court in *Begay* inserted between the two passages it quoted from the Model Penal Code. The Court did not adopt the Code's definition of arson. It thus left open the possibility that generic arson might have a broader sweep.

The Court was wise to do that. To confine arson to the examples that the Court gave (destroying buildings and damaging property for the insurance proceeds) would be arbitrary to the point of absurdity. Some people live in tents. Are tents "buildings"? Some people live in their cars; cars are not buildings. But recreational vehicles are advertised as self-contained mobile dwellings. If you torch such a vehicle, or a camper's tent, or a car that you know the owner sleeps in, or for that matter a newsstand, are you not guilty of generic arson? Are those burnings of another person's property categorically less grave than any burning of anything one would call a "building"? And finally suppose you are an unsuccessful bidder at a Sotheby's auction of an immensely valuable painting by Andy Warhol. As the painting is being carried out of Sotheby's to the winning bidder's limousine, you go berserk with disappointment and set fire to the painting; is that not generic arson, even though a painting is not a

building? Or suppose the painting is still in Sotheby's when you torch it, but you have no intent to damage or destroy Sotheby's, though that turns out to be one consequence of your act. Is that not generic arson either? No, says the defendant, who insists that generic arson is limited to deliberately destroying a building by fire.

Wrong again. The concept of arson has evolved from its common law origins, when it protected not property as such but occupants of property. 3 Wayne R. LaFave, *Substantive Criminal Law* § 21.3(a), p. 240 (2d ed. 2003); John Poulos, "The Metamorphosis of the Law of Arson," 51 *Mo. L. Rev.* 295, 324 (1986). In the early common law, if you owned a building but it was occupied by a tenant you would be guilty of arson if you burned it down. *Id*. at 311; 3 LaFave, *supra*, § 21.3(d), p. 248. But not if it was unoccupied. Later the definition of arson was extended to "the malicious burning of the dwelling house of another." *Id*., § 21.3, p. 239. The extension to personal property came much later, but it came. Today a majority of states make arson of personal property a crime, *United States v. Velez-Alderete*, 569 F.3d 541, 545 (5th Cir. 2009) (per curiam), as does federal law. 18 U.S.C. § 844(i); *United States v. McBride*, 724 F.3d 754, 758–59 (7th Cir. 2013). To exclude all but buildings from the concept of arson would be contrary to the modern understanding of arson, as well as being arbitrary.

Yet the example we gave earlier of the burned hat gives rise to a concern that to erase the line between buildings and other property entirely would result in counting trivial arsons as "violent felonies," with potentially great impact on sentencing. The obvious solution would be to fix a minimum value on property other than buildings that would be com-

parable to the value of a building. Of course the range in the value of buildings is enormous (from a bungalow to the Shanghai Tower, expected to cost $2.4 billion when it is completed), but few indeed are the number of buildings worth less than $100.

A number of states, like Wisconsin, do require a specified minimum value of personal property (though not of a building) to make the burning of it punishable as arson. See *United States v. Velez-Alderete*, *supra*, 569 F.3d at 545 n. 4, for a list. The minimum ranges from $25 in Vermont, see 13 Vt. Stat. § 504, to $1,000 in Minnesota. Minn. Stat. § 609.562. Indiana, rather than fixing a minimum value of the property burned, requires that the damage caused by the fire be at least $5,000. Ind. Code § 35-43-1-1(a)(3). Surprisingly, the federal arson statute specifies neither a minimum value of property, whether it's a building or any other form of property, nor a minimum damage amount, yet fixes a minimum prison term of five years. 18 U.S.C. §§ 844(f)(1), (i). Questionable as the failure to specify a minimum value or damage amount may seem (a sentence of five years in prison for setting fire to a poster advertising tickets to a monster truck rally across the state border seems excessive), the federal statute provides a compelling ground for regarding the Wisconsin statute at issue in this case, which does specify a minimum value of the property destroyed, though a very low one ($100), as punishing generic arson. For in defining arson in the Armed Career Criminal Act the courts are trying to determine what Congress regards as arson. The federal arson statute, lacking as it does any requirement that the property damaged or destroyed by fire be a building or that it have a minimum value, is powerful evidence of that. It took its present form in

1982 and the Armed Career Criminal Act was enacted two years later.

The federal statute is limited to arson in interstate and foreign commerce (which is why we added "across the state border" to our example), which obviously the state statutes are not. But the limitation is in recognition that not all arson is within the scope of federal power, rather than a declaration that arson that affects interstate or foreign commerce is categorically more serious than arson that does not—that arson that affects interstate commerce but causes only $50 in damage is more serious than arson punishable under the Wisconsin statute at issue.

The defendant points out that generic arson requires "purposeful conduct," while the Wisconsin statute requires only that the fire be started "intentionally," which under Wisconsin law means that the defendant either has the "purpose to do the thing [that is the crime] or cause the result" or "is aware that his or her conduct is practically certain to cause that result." Wis. Stat. § 939.23(3). The defendant argues that because the statutory definition of "intentionally" fails to confine the arson statute to arson whose purpose is to damage property, the statute reaches beyond generic arson. Not so. "Suppose you blow up a plane carrying X and Y in order to kill X. If both die in the explosion, you are just as much Y's murderer as X's, not because of the fiction of transferred intent but because you knew that Y (or any other person who might be a passenger on the plane) would die if your plot against X succeeded. *United States v. McAnally*, 666 F.2d 1116, 1119 (7th Cir. 1981). It is not a transferred-intent case because nothing went wrong with your plan; it is a case of extreme recklessness, equated to deliber-

ateness. *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985). You killed Y for an ulterior motive, it is true, but most murders have ulterior motives." *In re EDC, Inc.*, 930 F.2d 1275, 1279 (7th Cir. 1991); see also 1 LaFave, *supra*, § 5.2(a), p. 341.

Coming closer to home, were intent limited to purpose then even torching the state capital would not be generic arson. The arsonist's purpose might have been merely to warm his hands, though he knew the result would be the building's destruction. Given such a possibility and the fact that the details of a defendant's conduct including his intentions are irrelevant to deciding whether a crime is a violent felony, Wisconsin's crime of "arson of buildings," Wis. Stat. § 943.02(1), would not be arson within the meaning of the Armed Career Criminal Act because it punishes any arsonist who "intentionally damages any building" by fire. And while it's true that the Supreme Court said in *Begay*, as we noted earlier, that the offenses enumerated in the Act, which include arson, "all typically involve purposeful … conduct," the Court neither defined "purposeful" nor explained the qualifier "typically."

The proper question is whether "intentionally" in Wisconsin law has a broader meaning than "maliciously" in the federal arson statute, which we're using as our model of generic arson. In the *McBride* case we defined "maliciously" to mean "deliberately (or in willful disregard of known or suspected consequences) using fire *to do a harmful act*." *United States v. McBride*, *supra*, 724 F.3d at 759 (emphasis in original). If "intentionally" is no broader than "maliciously" so understood, the Wisconsin statute at issue in this case comports with the federal statute. Actually the federal statute

requires less proof than its Wisconsin counterpart. It re-
quires no proof of minimum value or minimum damage;
and a "willful disregard of known or *suspected* consequenc-
es" is less culpable than being "aware that his or her conduct
is *practically certain* to cause that result" (emphasis added).
Practical certainty is a higher standard of proof than suspi-
cion.

The defendant clings to our opinion in *Brown v. Caraway*,
719 F.3d 583, 588–91 (7th Cir. 2013), which held that Dela-
ware's statute punishing arson in the third degree is not ge-
neric arson. "A person is guilty of arson in the third degree
when the person recklessly damages a building by inten-
tionally starting a fire or causing an explosion." 11 Del. Code
§ 801(a). A violation carries a maximum sentence of two
years. § 4205(b)(7). Under Delaware law a person acts "reck-
lessly with respect to an element of an offense when the per-
son is aware of and consciously disregards a substantial and
unjustifiable risk that the element exists or will result from
the conduct." § 231(e). That is a standard definition. See, e.g.,
*United States v. U.S. Gypsum Co.*, 438 U.S. 422, 445 (1978); *ALI
Model Penal Code* § 2.02(2)(c) (1985); 1 LaFave, *supra*, § 5.4(d),
pp. 376–77.

Conscious disregard of a risk is less culpable than a prac-
tical certainty that harm will ensue. Delaware's understand-
ing of recklessness may, moreover, despite the inclusion of
the word "consciously" in the statutory definition, be close
to gross negligence—and an arson statute that required
proof merely of gross negligence would not be punishing
only generic arson. Delaware punishes as arson in the *second*
degree the arsonist who "intentionally damages a building
by starting a fire or causing an explosion," 11 Del. Code

§ 802(a), and this "squarely fits the 'generic' definition of arson as defined in *Begay*." *Brown v. Caraway, supra*, 719 F.3d at 590 n. 3. The maximum sentence is eight years, 11 Del. Code § 4205(b)(4), marking second-degree arson as a far more serious crime than third-degree arson, with its two-year maximum. Wisconsin's law punishing arson other than of a building, like Delaware's second-degree arson law, punishes the arsonist who "intentionally damages" property. Wis. Stat. § 943.03. And Wisconsin like Delaware imposes a significantly higher standard of proof for "intent" than for "recklessness." Recklessness means that "the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk," § 939.24(1), while intent, as we said, means that "the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." §§ 939.23(3), (4).

Appealing to the oft-remarked ambiguity of the legal concept of "intent"—see, e.g., *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1530 (7th Cir. 1990) (describing it as "a chameleon, a puzzle, and possibly a chimera"); 1 LaFave, *supra*, § 5.2, pp. 340–44; Poulos, *supra*, pp. 410, 413–14—the defendant argues that "intending to" could mean just "being aware of a risk of." Indeed it could. See, e.g., 1 LaFave, *supra*, § 5.2, p. 340, § 5.4(f), pp. 376–77. But we have just seen that the Wisconsin arson-to-buildings statute, interpreted in light of the Wisconsin understanding of "intentionally damages," requires more than awareness of a risk of injury—requires that the defendant have a practical certainty that the risk will materialize. Earlier we noted the absence from the federal arson statute of any requirement of proof of minimum value or damage, and now we add that we don't consider our-

selves competent to specify such a minimum. To fix a dollar minimum, either of value or of damage, in order to draw a sensible line between arson of property (other than buildings) that is and that is not generic arson would be an arbitrary undertaking by a federal court. On what basis could a judge pick a number? If $100 is too low, is $5,000 too high? How is "too low" or "too high" to be determined? That is a legislative rather than a judicial task. See *Hoctor v. USDA*, 82 F.3d 165, 170–71 (7th Cir. 1996); *Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 495–96 (D.C. Cir. 2010); see also Henry J. Friendly, "The Federal Administrative Agencies: The Need for Better Definition of Standards," 75 *Harv. L. Rev.* 863, 869 and n. 34 (1962).

Our interpretation of generic arson as embracing the intentional or malicious burning of any property, regardless of value or amount of damage, coincides with the interpretation that has been adopted by the Fifth, Eighth, and Ninth Circuits, *United States v. Velez-Alderete*, *supra*, 569 F.3d at 546; *United States v. Whaley*, 552 F.3d 904, 906 (8th Cir. 2009); *United States v. Velasquez-Reyes*, 427 F.3d 1227, 1230 (9th Cir. 2005)—all cited approvingly, by the way, in *Brown v. Caraway*, *supra*, 719 F.3d at 590. We've found, and the parties have cited, no contrary authority.

AFFIRMED.