In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2278

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SERGIO GAMEZ,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:19-cr-00114-JD-JEM-1 — **Jon E. DeGuilio**, *Judge.*

———————————

ARGUED APRIL 11, 2023 — DECIDED JANUARY 2, 2024

———————————

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Sergio Gamez challenges the 15-year mandatory minimum federal sentence he received under the Armed Career Criminal Act, which applies to persons with three or more violent felonies who are convicted of possessing a firearm as a felon. We previously certified this case to the Indiana Supreme Court for guidance on the elements of Indiana arson—one of Gamez's prior felony convictions. The state's supreme court declined to address the certified

question, requiring us to now resolve whether a conviction under Indiana's 2002 arson statute constitutes a "violent felony" within the meaning of 18 U.S.C. § 924(e). Concluding that the answer is no, we return the case to the district court for resentencing.

**I**

With this being our second time addressing Gamez's appeal, only an abbreviated summary of the facts is necessary. Anyone interested in the full background can find it in our prior opinion. See *United States v. Gamez*, 77 F.4th 594 (7th Cir. 2023).

In June 2021, Sergio Gamez pleaded guilty to unlawfully possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). At the time, Gamez had three prior felony convictions under Indiana law: two for robbery and one for aiding and abetting arson.

At sentencing, the question was whether Gamez's three prior felony convictions triggered the sentencing enhancement under § 924(e) of the Armed Career Criminal Act, commonly shorthanded as ACCA. By its terms, § 924(e) requires a 15-year mandatory minimum sentence for defendants convicted of violating § 922(g)(1) after committing three or more "violent felon[ies] … on occasions different from one another." *Id.* § 924(e)(1). The government viewed each of Gamez's prior convictions as a qualifying violent felony.

Gamez objected, focusing on his prior conviction for aiding and abetting arson and arguing that Indiana's arson statute criminalized too broad a range of conduct for his offense to qualify as a violent felony within the meaning of § 924(e)'s sentencing enhancement. The district court agreed with the

government and sentenced Gamez to the 15-year mandatory minimum.

On appeal, the parties renewed their respective positions on whether Gamez's Indiana arson conviction qualified as a predicate violent felony under § 924(e). We found the question difficult and decided to seek guidance from the Indiana Supreme Court. See *Gamez*, 77 F.4th at 602–03. We therefore certified the following question:

> Indiana law states that arson occurs when a person "knowingly or intentionally damages" certain property "by means of fire, explosive, or destructive device." Ind. Code § 35-43-1-1(a). Indiana case law, however, has stated that the corpus delicti of arson "consists of the burning of the property in question and a criminal agency as a cause of that burning." *Williams v. State*, 837 N.E.2d 615, 618 (Ind. Ct. App. 2005); see also *Simmons v. State*, 234 Ind. 489, 129 N.E.2d 121, 123 (1955). Under Indiana law, need the state prove that the defendant burned property in order to obtain a conviction for arson? Or is it sufficient to prove that the defendant more generally caused damage to property "by means of fire, explosive, or destructive device?"

*Id.*

In September 2023, the Indiana Supreme Court, as was its right, declined to address the certified question. So the question now returns to us for resolution.

## II

Answering the question presented requires application of the so-called categorical approach. The approach roots itself in the Supreme Court's 1990 decision in *Taylor v. United States*, 495 U.S. 575, and has become very familiar to federal judges. Our prior opinion—and many others—describe the categorical approach in much detail. See *Gamez*, 77 F.4th at 598–99; *United States v. Woods*, 576 F.3d 400, 403–05 (7th Cir. 2009).

The beginning point is the federal sentencing enhancement at issue, 18 U.S.C. § 924(e). That provision defines "violent felony" to include felony "burglary, arson, or extortion." *Id.* § 924(e)(2)(B)(ii). By listing these offenses without specifically defining them, Congress referred only to their "generic versions—not to all variants of the offenses." *Mathis v. United States*, 579 U.S. 500, 503 (2016). Our court and others have defined generic arson as "the intentional or malicious burning of any property." *United States v. Misleveck*, 735 F.3d 983, 988 (7th Cir. 2013); see also *United States v. Knight*, 606 F.3d 171, 174 (4th Cir. 2010) (collecting cases).

To qualify as a violent felony under § 924(e), Indiana's arson statute must "substantially correspond[ ]" to that generic definition. See *Quarles v. United States*, 139 S. Ct. 1872, 1876 (2019) (internal quotations omitted) (explaining and applying the categorical approach in this way). This means the elements of Indiana arson—"the things the prosecution must prove to sustain a conviction"—must be "the same as, or narrower than, those of the generic offense." *Mathis*, 579 U.S. at 504 (internal quotations omitted). So to constitute a violent felony, an Indiana arson conviction must require, at a

minimum, the intentional or malicious burning of any property. See *Misleveck*, 735 F.3d at 988.

Indiana enacted its modern arson statute in 1976. Act of Feb. 25, 1976, Ind. Pub. L. No. 148-1976 § 3. Before then, Indiana law had defined arson as intentionally setting fire to property. See Act of Feb. 16, 1972, Ind. Pub. L. No. 221-1972 § 1 ("Any person who willfully and maliciously sets fire to or burns [specific categories of real property] … shall be guilty of arson."). The 1976 Act expanded that definition, describing arson as the knowing or intentional damaging of property "by means of fire *or explosive*." Ind. Pub. L. No. 148-1976 § 3 (emphasis added). In the wake of the terrorist attacks of September 11, 2001, Indiana further broadened its arson statute. See Act of Mar. 26, 2002, Ind. Pub. L. No. 123-2002 § 36. The 2002 amendment—which was on the books at the time of Gamez's conviction—made it a crime to "knowingly or intentionally damage[ ]" property "by means of fire, explosive, or destructive device." Ind. Code § 35-43-1-1(a) (2002).

The 2002 amendment defined "destructive device" as "(1) an explosive, incendiary, or overpressure device" configured as a bomb, grenade, rocket, missile, mine, Molotov cocktail, or substantially similar device or "(2) a type of weapon that may be readily converted to expel a projectile by the action of an explosive or other propellant" that is not a "pistol, rifle, shotgun, or weapon suitable for sporting or personal safety purposes." Ind. Code § 35-47.5-2-4(a)–(b). The question before us turns on the scope of this definition within Indiana's amended arson statute.

Gamez argues that his arson offense is not a crime of violence because "arson" under the 2002 statute is categorically broader than "arson" as described in § 924(e). That view finds

support in the statutory text enacted into law by the Indiana General Assembly. Unlike generic arson, Indiana's 2002 arson statute does not require burning. The statute extends to property damage caused by "fire, explosive, *or destructive device*." Ind. Code § 35-43-1-1(a) (2002) (emphasis added). If "destructive device" were limited to devices that cause fire, it would be duplicative of the terms "fire" and "explosive" that immediately precede it. See *Est. of Moreland v. Dieter*, 576 F.3d 691, 699 (7th Cir. 2009) (applying the well-established canon against surplusage when interpreting an Indiana statute). The statute's plain language does not permit such a construction. It defines "destructive device" to include "overpressure devices" and converted projectile launchers that operate "by the action of an explosive or other propellant." See Ind. Code § 35-47.5-2-4(a)(1)–(2). As Gamez points out, this would include non-incendiary weapons that operate by compressed air or another non-explosive propellant. Using such a weapon could result in the commission of arson under Indiana law without any property being set aflame or otherwise burning. By not confining itself to fire-related damage, the text of the 2002 statute would seem to exceed the scope of the generic federal definition of arson, suggesting that arson under Indiana law may not qualify as a "crime of violence" within the meaning of 18 U.S.C. § 924(e).

When discerning the elements of a state's criminal statute, however, we do not stop at the statutory text. We must also consider how state courts have interpreted and applied the statute. See *United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022) (emphasizing the importance of "respect due [to] state courts as the final arbiters of state law"); *Mathis*, 579 U.S. at 507 (examining Iowa courts' interpretation of the state's burglary statute). Ultimately, the breadth of a state's criminal statute

depends not on our own independent reading of its language but rather on "what Indiana courts require to convict a person" under it in practice. *United States v. Duncan*, 833 F.3d 751, 754 (7th Cir. 2016).

Having conducted its own review of Indiana case law, the government points to the longstanding common law doctrine of *corpus delicti* that it claims narrows the scope of state's arson law. That doctrine places a check on convictions based solely on a defendant's out-of-court confession. See *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017). Its purpose is to "prevent the admission of a confession to a crime which never occurred" by requiring proof in every case "that the specific crime charged has actually been committed by someone." *Id.* (internal quotations omitted). To do so, prosecutors must supplement any confession with independent evidence of a crime's "*corpus delicti*" (literally "the body of the crime"). *Id.*; see also 1 Wayne R. LaFave, *Substantive Criminal Law* § 1.4(b) (3d ed. 2022) (examining the *corpus delicti* doctrine).

The required *corpus delicti* varies from crime to crime. In all cases, however, Indiana's application of the doctrine requires proof of "(1) the occurrence of [a] specific kind of injury and (2) someone's criminal act as the cause of the injury." *Sweeney v. State*, 704 N.E.2d 86, 111 (Ind. 1998). The *corpus delicti* of murder, for instance, can be shown by "[e]vidence of an identifiable body bearing the marks of a non-accidental death." *Willoughby v. State*, 552 N.E.2d 462, 467 (Ind. 1990).

The parties dispute the *corpus delicti* of arson. The government claims that the doctrine requires evidence of burned property. It relies for support on *Williams v. Indiana*, 837 N.E.2d 615 (Ind. Ct. App. 2005), which held that evidence of a burned house coupled with expert testimony disclaiming a

natural or accidental cause satisfied arson's *corpus delicti* requirement. See *id.* at 618–19. The *Williams* court explained that "the *corpus delicti* of arson consists of the burning of the property in question and a criminal agency as a cause of that burning." *Id.* at 618 (citing *Fox v. State*, 384 N.E.2d 1159, 1166 n.16 (Ind. Ct. App. 1979)). Seizing on this language, the government asserts that under the *corpus delicti* rule, Indiana courts require prosecutors to provide evidence of fire-related property damage in all arson cases, regardless of how broadly the statute may appear to extend on its face.

We cannot agree. *Corpus delicti* does not add to the elements a prosecutor must prove to secure a conviction under a criminal statute. It simply requires a minimum level of proof that an offense—however defined—actually occurred. Establishing the statutory elements of an offense necessarily satisfies the *corpus delicti* rule because the doctrine exists and operates in a more limited manner—to ensure that a charged crime happened. See *Riley v. State*, 349 N.E.2d 704, 706 (Ind. 1976) ("[E]very crime may be said to have a 'corpus delicti' which will *necessarily be demonstrated* in proving the elements of the crime." (emphasis added)).

Indiana case law supports this conclusion. To be sure, multiple cases describe the *corpus delicti* of arson as intentionally burning property. See, *e.g.*, *Simmons v. State*, 129 N.E.2d 121, 123 (Ind. 1955); *Williams v. State*, 169 N.E. 698, 701 (Ind. Ct. App. 1930); *Ellis v. State*, 250 N.E.2d 364, 366 (Ind. 1969); *Pawloski v. State*, 380 N.E.2d 1230, 1235 (Ind. 1978). But each of those cases addressed a pre-modern version of Indiana's arson law that included intentional burning as an express element. None of the cases addresses, let alone resolves, whether the *corpus delicti* requirement changed alongside the arson

statute when the General Assembly expanded it in 1976 and 2002. Indeed, our review shows that each case aligns fully with the principle that an offense's *corpus delicti* mirrors rather than limits its statutory elements.

We have found no decision in which an Indiana court has struck down an arson conviction under the *corpus delicti* rule based on a lack of burning after the passage of the 1976 statute. To the contrary, Indiana courts have upheld arson convictions under the modern statute even when no property was burned. See, *e.g.*, *Pedigo v. State*, 443 N.E.2d 347, 350 (Ind. Ct. App. 1982) (upholding an arson conviction after defendants exploded a van and damaged a nearby house with shrapnel and flying debris, even though no burning occurred); *Cronk v. State*, 443 N.E.2d 882, 888 (Ind. Ct. App. 1983) (upholding a conviction for attempted arson after a defendant brought a pipe bomb to a protest, reasoning that "to knowingly or intentionally damage property"—including through the "fragmentation of [a] bomb"—was sufficient evidence of attempted arson). This suggests that after 1976, arson's *corpus delicti* rule no longer required evidence of a fire.

We acknowledge that some Indiana courts after 1976 continued to refer to intentional burning when describing arson's *corpus delicti*. See *Williams*, 837 N.E.2d at 618; *Fox*, 384 N.E.2d at 1166 n.16; *Fleener v. State*, 412 N.E.2d 778, 781 (Ind. 1980) (offering, as an example of *corpus delicti*, "the charred remains of a burnt house"). In doing so, however, those courts appeared to reference standards tied to pre-1976 versions of the statute. See *Fox*, 384 N.E.2d at 1166 n.16 (addressing the premodern arson statute that required burning); *Williams*, 837 N.E.2d at 618 (quoting from *Fox*); *Fleener*, 412 N.E.2d at 781 (describing the "traditional definition of corpus delicti" while

quoting case law that addressed Indiana's pre-modern statute).

Even more, none of these cases held that evidence of burned property is *necessary* to satisfy arson's *corpus delicti* requirement. At best, they establish that such evidence is *sufficient* to do so. Both *Fox* and *Williams* involved defendants who set fire to property, and they held that the evidence of intentional burning sufficed to establish the elements of arson and its *corpus delicti*, respectively. See *Fox*, 384 N.E.2d at 1166–67; *Williams*, 837 N.E.2d at 618–19. Likewise, *Fleener* stated merely that evidence of intentional burning was "sufficient to show corpus delicti" under the traditional definition. 412 N.E.2d at 781. In the final analysis, we read these cases as standing for the proposition that evidence of purposefully caused fire is enough to surpass the *corpus delicti* bar—but not as establishing a rule that, in the absence of such evidence, the bar precludes conviction in an arson case involving explosives or a destructive device.

## III

All of this leads us to hold that, in our best assessment, Indiana law does not require the burning of property as an element of the offense of arson. Nor does Indiana's *corpus delicti* rule insert such a requirement between the statutory lines. These findings—coupled with the fact that Indiana courts have repeatedly upheld arson convictions not involving fire—establish "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales*, 549 U.S. at 193. So we conclude that Indiana arson is categorically

broader than the generic offense of arson recognized as a violent felony in 18 U.S.C. § 924(e)(2)(B)(ii).

Because Sergio Gamez's arson conviction does not qualify as a crime of violence rendering him an armed career criminal under ACCA, we VACATE his sentence and REMAND for resentencing without the 15-year mandatory minimum required by § 924(e).