In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-1130

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

QUINTIN T. FERGUSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:21CR30 — **Damon R. Leichty**, *Judge.*

_____

ARGUED FEBRUARY 4, 2025 — DECIDED MARCH 17, 2025

_____

Before SYKES, *Chief Judge*, and EASTERBROOK and PRYOR,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge*. Quintin Ferguson was sentenced to 240 months' imprisonment for violating 18 U.S.C. §844(i). The district court treated him as a career offender under U.S.S.G. §4B1.1(a) after concluding that §844(i) is a "crime of violence". Classification as a career offender is appropriate only if the current conviction and at least two prior convictions are for felony drug offenses or crimes of violence.

Guideline 4B1.2(a)(2) specifies that "arson" is a "crime of violence". In this appeal Ferguson denies that a violation of §844(i) counts as "arson" for the purpose of §4B1.2(a)(2).

Section 844(i) provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

Maliciously destroying a building or vehicle by fire or explosives sounds like arson, but Ferguson says that it is not because §844(i) does not require proof that a defendant who burned his own property did so to collect insurance.

The parties agree that "arson" means generic arson rather than any particular variant. Observing that the American Law Institute's *Model Penal Code* §220.1 (1962), limits its definition, if the defendant owned the torched property, to acts designed to bilk insurers, Ferguson insists that §844(i) therefore departs from generic arson and cannot be treated as a crime of violence under §4B1.2(a)(2).

The Sentencing Guidelines do not define "arson" as that term is used in §4B1.2—though Appendix A to the Guidelines directs violations of §844(i) to be sentenced under U.S.S.G.

§2K1.4, which bears the caption "Arson; Property Damage by Use of Explosives". What is more, 18 U.S.C. §3295 treats §844(i) as an "arson offense". Perhaps these cross-references suffice to call the §844(i) crime "arson."

The parties' shared assumption that we must ask whether §844(i) deserves the label "generic arson" comes from the way the Supreme Court has treated the word "burglary" in 18 U.S.C. §924(e), the Armed Career Criminal Act, which classifies burglary as a crime of violence for some sentencing purposes. See *Taylor v. United States*, 495 U.S. 575 (1990). The Justices noted that §924(e) does not define "burglary" and concluded that it was necessary to devise a generic definition. The cross-reference from Appendix A in the Guidelines may make that step unnecessary when dealing with §4B1.2, but, as the parties have not argued this, we shall assume for current purposes that we need to define "generic arson" as *Taylor* and its successors needed to define "generic burglary." (As *Taylor* did when defining generic burglary, we ask whether the elements of the statute fit the generic definition, not what the defendant did in fact. This is known as the categorical approach.)

This isn't the first time we have been asked to define "generic arson." *United States v. Misleveck*, 735 F.3d 983, 988 (7th Cir. 2013), and *United States v. Gamez*, 89 F.4th 608, 610 (7th Cir. 2024), both adopt "the intentional or malicious burning of any property" as the definition of the generic offense. See also *Brown v. Caraway*, 719 F.3d 583, 589–91 (7th Cir. 2013) (willful or malicious burning). The definition does not limit coverage to the burning of a stranger's property plus the burning of one's own property to defraud an insurer. Section 844(i) fits comfortably within the generic definition that we have articulated. (The mental-state element in §844(i) is

malice; we need not consider whether other flavors of intent, such as a design to burn charcoal briquettes in a grill on one's patio, would qualify.)

Ferguson wants us to add an insurance qualifier to the destruction of one's own property, because the Supreme Court mentioned §220.1 of the *Model Penal Code* in *Begay v. United States*, 553 U.S. 137, 145 (2008). Yet *Begay* did not define "generic arson". The question it resolved was whether driving under the influence of alcohol was a crime of violence under 18 U.S.C. §924(e)(2)(B)(ii), which refers to "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury". The Court mentioned arson to illustrate the sort of risks the "otherwise involves" language was getting at; it used the *Model Penal Code* only to observe that its text defined a crime that poses serious risks to persons and property. The Justices did not say anything about the effect of the *Model Penal Code*'s insurance proviso or the extent to which that clause affects the federal definition of "arson."

Although the Supreme Court has never tried to define "generic arson," its series of cases defining "generic burglary" illuminates the path. *Taylor* referred to definitions commonly followed under state law when §924(e) was enacted. 495 U.S. at 580. It wrote: "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." *Id*. at 598. And it provisionally defined this as a crime "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Many federal courts later held that this excludes entries into other dwelling places, such as houseboats. *United States v. Stitt*, 586 U.S. 27 (2018), asked

whether a state law making it a crime to enter a mobile home, trailer, or tent designed for overnight accommodation should be treated as generic burglary. It answered "yes" after canvassing state law and finding that statutes in force at the relevant time largely called this offense burglary. See also *Mathis v. United States*, 579 U.S. 500 (2016).

The Supreme Court's approach to burglary under §924(e) leads us to ask: When the Sentencing Guidelines were adopted in 1987, and when the career-offender guideline was added in 1989, did state laws defining arson require proof that a person who maliciously burned his own property did so in order to collect insurance? Did they require proof that the property belonged to another? Both answers are no.

By 1987 none of the states limited arson to burning the property of another. See John Poulos, *The Metamorphosis of the Law of Arson*, 51 Missouri L. Rev. 295, 446 (1986). And only two states (North Dakota and Wisconsin) then followed the *Model Penal Code*'s definition of arson as the burning of one's own property only when the goal was to collect insurance proceeds. The other states all treated arson as encompassing the burning of one's own property for reasons unrelated to the collection of insurance, including if the property was occupied (e.g., Alabama, Arizona, Connecticut, Kentucky), if the burning put another person at risk of harm whether or not the property was in use as a residence (e.g., Arkansas, Georgia, Ohio), or if the burning put another's property at risk of harm (e.g., Pennsylvania, Maine). The Appendix to this opinion, which we have modeled on the Appendix to *Stitt*, collects the state arson statutes in force in 1987.

When the Guidelines were adopted, the approach to arson prevailing among the states largely matched the definition in

§844(i). We therefore hold that a conviction under §844(i) is one for "arson" as that term appears in the career-offender guideline.

AFFIRMED

# APPENDIX

ALA. CODE §§ 13A-7-41, 13A-7-43 (1977); *id.* § 13A-7-42 (1983); ALASKA STAT. §11.46.410 (1978); *id.* § 11.46.400 (1983); ARIZ. REV. STAT. ANN. §§ 13-1703; 13-1704 (1987); ARK. CODE ANN. §41-1902 (1987); CAL. PENAL CODE §451 (1986); COLO. REV. STAT. §§ 18-4-103; 18-4-105 (1977); *id.* §18-4-102 (1986); CONN. GEN. STAT. §53a-113 (1980); *id.* §53a-111 (1982); *id.* §53a-112 (1984); DEL. CODE ANN. tit. 11, §§ 801, 802, 803 (1972); D.C. CODE §§ 22-301, 22-302 (1901); *id.* § 22-303 (1965); FLA. STAT. §806.01 (1979); GA. CODE ANN. §§ 26-1401, 26-1402, 26-1403 (1979); HAW. REV. STAT. §§ 708-820, 708-821, 708-823 (1984); *id.* §708-822 (1986); IDAHO CODE §§ 18-801, 18-802 (1972); ILL. REV. STAT. ch. 38 §20-1 (1973); *id.* §20-1.1 (1985); IND. CODE §35-43-1-1 (1982); IOWA CODE §§ 712.1, 712.3, 712.4 (1976); *id.* §712.2 (1984); KAN. STAT. ANN. §21-3718 (1969); KY. REV. STAT. ANN. §§ 513.020, 513.030, 513.040 (1982); LA. STAT. ANN. §14:53 (1980); *id.* §14:51 (1981); *id.* §14:52 (1985); ME. STAT. tit. 17-A, §802 (1983); MD. CODE Art. 27, §6 (1969); MASS. GEN. LAWS ch. 266, §1 (1974); MICH. COMP. LAWS §750.72 (1945); MINN. STAT. §609.563 (1985); *id.* §§ 609.561, 609.562 (1986); MISS. CODE ANN. §§ 97-17-1, 97-17-5, 97-17-7, 97-17-9 (1932); *id.* §97-17-3 (1958); *id.* § 97-17-11 (1986); MO. REV. STAT. §§ 569.040, 569.050 (1987); MONT. CODE ANN. §§ 45-6-102; 45-6-103 (1985); NEB. REV. STAT. § 28-504 (1977); *id.* §§ 28-502, 28-503 (1981); NEV. REV. STAT. §§ 205.015, 205.020, 205.025 (1979); *id.* §205.010 (1987); N.H. REV. STAT. ANN. §634:1 (1975); N.J. STAT. ANN. §2C:17-1 (1981); N.M. STAT. ANN. §30-17-5 (1970); *id.* §30-17-6 (1963); N.Y. PENAL LAW §§ 150.05, 150.10, 150.15 (McKinney 1979); *id.* §150.20 (McKinney 1984); N.C. GEN. STAT. §§ 14-58.2, 14-63, 14-64, 14-65, 14-66 (1979); *id.* §§ 14-58, 14-59, 14-60, 14-61, 14-62, 14-62.1, 14-67.1 (1981); N.D. CENT.

CODE §12.1-21-01 (1979); OHIO REV. CODE ANN. §§ 2902.02, 2902.03 (1982); OKLA. STAT. tit. 21, §§ 1401, 1402, 1403, 1404 (1979); OR. REV. STAT. §§ 164.315, 164.325 (1971); 18 PA. CONS. STAT. § 3301 (1982); 11 R.I. GEN. LAWS §§ 11-4-6, 11-4-8 (1980); *id.* §§ 11-4-2, 11-4-3, 11-4-4, 11-4-5, 11-4-7 (1983); S.C. CODE ANN. §16-11-110 (1982); S.D. CODIFIED LAWS §§ 22-33-1, 22-33-2 (1977); TENN. CODE ANN. §39-1-505 (1968); *id.* §§ 39-3-202, 39-3-205 (1984); TEX. PENAL CODE ANN. § 28.02 (1981); UTAH CODE ANN. §§ 76-6-102, 76-6-103 (1986); VT. STAT. ANN. tit. 13, § 501 (1957); *id.* §§ 502, 503, 504, 505 (1981); VA. CODE ANN. §§ 18.2-79, 18.2-82, 18.2-86 (1975); *id.* §18.2-77 (1978); *id.* §§ 18.2-80, 18.2-81 (1981); WASH. REV. CODE §9A.48.030 (1975); *id.* §9A.48.020 (1981); W. VA. CODE §§ 61-3-1, 61-3-2, 61-3-4 (1935); *id.* § 61-3-3 (1957); WIS. STAT. §§ 943.02, 943.03, 943.04 (1977); WYO. STAT. ANN. §§ 6-3-101, 6-3-102 (1983); *id.* §§ 6-3-103, 6-3-104 (1984).